**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

DRINK LMNT, INC.,

*Plaintiff*,

v.

ELMNT, LLC,

*Defendant*.

C.A. No. 2:25-cv-1018-SPC-DNF

**JURY TRIAL DEMANDED**

# DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# TABLE OF CONTENTS


**I. INTRODUCTION ..... 1**

**II. BACKGROUND ..... 3**

A. Factual Background ..... 3

B. Procedural Background ..... 4

**III. LEGAL STANDARD ..... 5**

A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) ..... 5

B. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ..... 5

**IV. ARGUMENT ..... 6**

A. DLI Cannot Satisfy Its Burden to Establish Personal Jurisdiction ..... 6

1. DLI's Allegations Have Already Been Held to Be Insufficient to Satisfy Due Process Considerations for Personal Jurisdiction ..... 7

2. Personal Jurisdiction Violates Due Process ..... 8

B. DLI Has Failed to Adequately Allege Likelihood of Confusion ..... 12

1. Strength of DLI's Mark ..... 14

2. Similarity of the Marks ..... 16

3. Similarity of the Goods ..... 19

4. Similarity of Trade Channels, Advertising, and Customers ..... 20

5. ELMNT's Intent In Adopting the Mark ..... 23

6. Evidence of Actual Confusion ..... 24

C. ELMNT's Trademark Registration Further Undermines DLI's Position ..... 24

**V. CONCLUSION ..... 25**

## TABLE OF AUTHORITIES

### CASES

*AmBrit, Inc. v. Kraft, Inc.*,
812 F.2d 1531 (11th Cir. 1986) ........ 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 2, 5, 6, 25

*Avow Hospice, Inc. v. Avow Foundation for Abortion Access, Inc.*,
C.A. No. 2:23-cv-132-SPC-KCD, 2023 WL 8878221
(M.D. Fla. Dec. 22, 2023) ........ 9, 12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 2, 6, 25

*Burger King Corp. v. Rudzewicz*,
471 U.S 462 (1985) ........ 8

*Calder v. Jones,*
465 U.S. 783 (1984) ........ 9, 10, 11

*Crystal Entm't & Filmworks Inc. v. Jurado*,
643 F.3d 1313 (11th Cir. 2011) ........ 13

*Custom Mfg. & Eng'g, Inc. v. Midway Servcs., Inc.*,
508 F.3d 641 (11th Cir. 2007) ........ 13, 17

*D.B.C. Corp. v. Nucita Venezolana, C.A.*,
464 F. Supp. 3d 1323 (S.D. Fla. 2020) ........ 14

*DCS Real Estate Investments, LLC v. Bella Collina Events, LLC*,
C.A. No. 5:14-cv-678-JSM-PRL, 2015 WL 628586
(M.D. Fla. Feb. 12, 2015) ........ 8, 12

*Dow Jones & Co, Inc. v. Int'l Sec. Exch., Inc.*,
451 F.3d 295 (2d Cir. 2006) ........ 14

*Duro Beam, LLC v. Manning*,
C.A. No. 24-CV-81550-WPD-BER, 2025 WL 2416413
(S.D. Fla. Aug. 21, 2025) ....................14

*Earth, Wind & Fire IP, LLC v. Substantial Music Grp. LLC*,
720 F. Supp. 3d 1261 (M.D. Fla. 2024) ....................21

*FCOA LLC v. Foremost Title & Escrow Servs. LLC*,
57 F.4th 939 (11th Cir. 2023)....................23

*Florida Int'l Univ. Bd. of Trustees v. Florida National Univ.*,
830 F.3d 1242 (11th Cir. 2016).................... passim

*Freedom Sav. & Loan Ass'n v. Way*,
757 F.2d 1176 (11th Cir. 1985).................... 14, 15, 18, 23

*Frehling Enter., Inc. v Int'l Select Grp., Inc.*,
192 F.3d 1330 (11th Cir. 1999).................... 20, 24

*Goforit Enter. LLC v. Digimedia.com L.P.*,
513 F. Supp. 2d 1325 (M.D. Fl. 2007) ....................12

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ....................7

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984) ....................8

*Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*,
931 F.2d 1100 (6th Cir. 1991)....................17

*Homes & Land Affiliates, LLC v. Homes & Loans Magazine, LLC*,
598 F. Supp. 2d 1248 (M.D. Fla. 2009) ....................16

*Inkit, Inc. v. Nitex UK Ltd.*,
C.A. No. 8:23-cv-02023-FWS-DFM, 2024 WL 3915162
(C.D. Cal. July 19, 2024)....................13

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945) ....................7

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*,
599 U.S. 140 (2023) ....................................................................15

*James River Insurance Co. v. Ground Down Engineering, Inc.*,
540 F.3d 1270 (11th Cir. 2008)....................................................................6

*John H. Harland Co. v Clarke Checks, Inc.*,
711 F.2d 966 (11th Cir. 1983)....................................................................17

*Katz v. Modiri*,
283 F. Supp. 2d 883 (S.D.N.Y. 2003)....................................................................23

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984) ....................................................................8

*Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*,
288 F.3d 1264 (11th Cir. 2002)....................................................................5

*Michael Caruso & Co., Inc. v. Estefan Enterp., Inc.*,
994 F. Supp. 1454 (S.D. Fla. 1998)....................................................................24

*Naples Screen Repair, LLC v. Arrow Handyman "LLC"*,
C.A. No. 2:20-cv-844-FtM-SPC-NPM, 2021 WL 75124
(M.D. Fla. Jan. 9, 2021)....................................................................22

*Nature's Best, Inc. v. Ultimate Nutrition, Inc.*,
323 F. Supp. 2d 429 (E.D.N.Y. 2004).......................................................... 22, 23

*Oldfield v. Pueblo De Bahia Lora, S.A.*,
558 F.3d 1210 (11th Cir. 2009)....................................................................9

*PeopleShare, LLC v. Volger*,
601 F. Supp. 3d 1276 (S.D. Fla. 2022)....................................................................5

*Public Impact, LLC v. Boston Consulting Group, Inc.*,
169 F. Supp. 3d 278 (D. Mass. 2016)....................................................................15

*RGF Environmental Grp., Inc. v. Activ Tek Environmental Corp.*,
C.A. No. 08-cv-80682-WPD, 2009 WL 10666940 (S.D. Fla. July 17, 2009).....15

*Rodrique v. Hearst Comms., Inc.*,
126 F.4th 85 (1st Cir. 2025) ....................................................................15

*Savannah College of Art & Design, inc. v. Sportswear, Inc.*,
983 F.3d 1273 (11th Cir. 2020)....................................................................21

*Three Blind Mice Designs Co. Inc. v. Cyrk, Inc.*,
892 F.Supp. 303 (D. Mass.1995)....................................................................13

*United Tech. Corp. v. Mazer*,
556 F.3d 1260 (11th Cir. 2009)....................................................................7

*Volt, LLC v. Volt Lightning Grp. LLC*,
369 F. Supp. 3d 1241 (M.D. Fla. 2019) ..........................................9, 11
*Walden v. Fiore,*
571 U.S. 277 (2014) ................................................................ 9, 10, 11

*Welding Servs. V. Forman*,
509 F.3d 1351 (11th Cir. 2007)....................................................................16

**STATUTES**

15 U.S.C. § 1115 ....................................................................26

15 U.S.C. § 1119 ....................................................................13

Fla. Sta. § 48.193(1)(a)(1)-(2)....................................................................7

**OTHER AUTHORITIES**

2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
(4th ed. 2004).................................................................... 15, 18, 21

**RULES**

Fed. R. Civ. P. 12(b)(2)....................................................................1, 5

Fed. R. Civ. P. 12(b)(6).................................................................... 1, 5, 14

Fed. R. Civ. P. 11 ....................................................................25

**Unless otherwise stated, all emphasis appearing in this brief is added.**

## I. INTRODUCTION

Pursuant to Rules 12(b)(2) and 12(b)(6), Defendant ELMNT, LLC ("ELMNT") moves to dismiss the complaint (DE 1, "Compl.") filed by Plaintiff Drink LMNT, Inc. ("DLI").

As a threshold matter, DLI has failed to carry its burden to establish that this Court may exercise personal jurisdiction over ELMNT. Indeed, an earlier iteration of this lawsuit, brought in the District of Massachusetts and asserting nearly identical allegations to those before the Court here, was recently dismissed for lack of personal jurisdiction. Rather than refile its complaint in the District of Utah, where ELMNT is based, DLI brought this Action before this Court, despite the fact that ELMNT has no more connection to Florida—and DLI has no more justification for asserting such connection to Florida—than it did to Massachusetts. This is forum shopping at its worst and should not be countenanced.

Moreover, although DLI adds a few new allegations in a fruitless attempt to establish personal jurisdiction here, the substance of its jurisdictional argument remains as weak as it was in the prior action. Thus, just as in the District of Massachusetts case, DLI's jurisdictional hook is premised entirely on the fact that ELMNT has made sales into Florida through nationally accessible websites. However (as the District of Massachusetts correctly held), such barebones allegations are insufficient for a plaintiff to demonstrate that the exercise of personal

jurisdiction comports with the Due Process Clause. Given the ubiquity of conducting business on the internet, a finding of specific personal jurisdiction based on allegations such as those set forth here would subject all ecommerce entities to jurisdiction in every court in the country and effectively eviscerate the purposeful availment requirement of the specific personal jurisdiction analysis. Accordingly, the Complaint must be dismissed in its entirety on that ground alone, and the Court need not go further in its analysis.

DLI's position on the merits fares no better. In order to succeed on any of its claims, DLI must plausibly plead a likelihood of confusion between its claimed trademark and ELMNT's marks. However, DLI barely pays lip service to the seven factors courts in this Circuit consider in conducting a likelihood of confusion analysis, and certainly does not set forth sufficient allegations plausibly demonstrating that confusion is likely here. Rather, DLI merely asserts, in conclusory fashion, that ELMNT's use of its marks is "causing and is likely to continue to cause confusion" and leaves it to the Court to surmise the basis for this assertion. Such conclusory pleadings are insufficient for DLI to carry its burden under *Iqbal/Twombly* of establishing that its claims are not just conceivable, but rather plausible. Moreover, given the crowded nature of the field in which these marks exist, the differences between the parties' marks, and the sophistication of the target consumers—all of which is evident from the face of the Complaint or

judicially noticeable documents—DLI cannot plausibly allege a likelihood of confusion here. Perhaps most tellingly, despite the parties coexisting for nearly four years, DLI has failed to allege even a ***single instance of actual consumer confusion***. This is fatal to its claims.

Accordingly, the Complaint should be dismissed with prejudice.

## II. BACKGROUND

### A. Factual Background

DLI markets and sells electrolyte drink mixes and beverages. (Compl. ¶ 20.) Since 2018, DLI has been using the mark "LMNT" (the "Mark") in connection with such products. (*Id.*) DLI markets its products through online channels such as its own website, Amazon.com, and Walmart.com, as well as in physical stores such as Walmart and The Vitamin Shoppe. (*Id.* ¶ 26.) DLI's target consumers are athletes, health-conscious individuals, and "any individuals that are looking to improve their health and performance through supplements." (*Id.* ¶ 27.) DLI owns several trademark registrations for the Mark in both block letter and stylized format, covering products including dietary supplement drink mixes, dietary beverage supplements in liquid and dry mix form, beverages containing electrolytes, and powders for preparing sports drinks. (*Id.* ¶ 28.)

ELMNT markets and sells supplements but does not sell electrolytes. (*Id.* ¶¶ 3-4, 33, 38.) Rather, examples of the products sold by ELMNT include Lion's Mane

Mushroom Brain Booster, Testosterone, Maca Pills, Magnesium L-Threonate, Collagen Burn, and Tongkat Ali. (*Id.*) ELMNT sells these products under the TERRA ELMNT mark and uses the terms "ELMNT" and "ELMNT HEALTH" (collectively, the "Allegedly Infringing Marks") in connection with its sales of products. (*See id.* ¶¶ 34-35.) DLI alleges that ELMNT has sold products under the Allegedly Infringing Marks since at least as early as February 2022. (*Id.* ¶ 78.) ELMNT advertises and sells its products through its own website as well as Amazon.com and Walmart.com, but does not sell through any physical locations. (*Id.* ¶ 37.) DLI also alleges that ELMNT's target consumers include athletes and individuals looking to improve their health and performance. (*Id.* ¶ 36.)

**B. Procedural Background**

On March 20, 2025, DLI filed a complaint in the District of Massachusetts, asserting nearly identical claims to those set forth in the Complaint. *See Drink LMNT, Inc. v. ELMNT, LLC*, C.A. No. 1:25-cv-10659-MJJ (D. Mass.) (the "D. Mass. Action"), DE 1. Indeed, a comparison between the complaint filed in the D. Mass. Action and the Complaint here shows that almost no allegations were added or changed. (*See* Declaration of David M. Lamb ("Lamb Decl.") Ex. A.) ELMNT moved to dismiss the D. Mass. Action on September 4, 2025, for lack of personal jurisdiction and failure to state a claim. *See* D. Mass. Action, DE 16-17. On November 5, 2025, the court in the D. Mass. Action granted ELMNT's motion,

finding that DLI had failed to establish personal jurisdiction. *See id.* at DE 29.

## III. LEGAL STANDARD

### A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *PeopleShare, LLC v. Volger*, 601 F. Supp. 3d 1276, 1279 (S.D. Fla. 2022). Where the defendant submits affidavits contradicting the jurisdictional allegations in the complaint, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). In refuting the defendant's submission, "the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Id.*

### B. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The "obligation to provide the grounds of [the plaintiff's] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (quotation marks and alteration omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level," and to cross the "line from conceivable to plausible." *Id.* at 555, 570; *see also James River Insurance Co. v. Ground Down Engineering, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008). Plaintiff must plead facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In evaluating the sufficiency of the factual allegations, the Court should disregard "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

## IV. ARGUMENT

The Complaint is subject to dismissal in its entirety both because DLI has failed to adequately allege that this Court can exercise personal jurisdiction over ELMNT, and because each of DLI's causes of action is insufficient on its face to state a claim for which relief can be granted.

### A. DLI Cannot Satisfy Its Burden to Establish Personal Jurisdiction

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). DLI alleges

that "[t]his Court has specific personal jurisdiction over ELMNT under Fla. Sta. § 48.193(1)(a)(1)-(2)."[1] Although ELMNT disputes that DLI's allegations are sufficient to establish that the exercise of personal jurisdiction over ELMNT is appropriate under the Florida long-arm statute, ELMNT focuses its arguments on the second prong of this analysis—the Due Process considerations.

**1. DLI's Allegations Have Already Been Held to Be Insufficient to Satisfy Due Process Considerations for Personal Jurisdiction**

As an initial matter, it cannot be overlooked that nearly identical allegations to those set forth here have already been rejected as insufficient to satisfy the Due Process prong of the personal jurisdiction analysis. *See* D. Mass. Action, D.E. 29. Although the Complaint here contains a few new allegations specifically directed to personal jurisdiction, such allegations do not alter the conclusion reached by the court in the D. Mass. Action as they are (1) factually inaccurate and contradicted by ELMNT's declaration submitted in support of this motion (as discussed in more detail below); (2) conclusory and unsupported by any evidence; or (3) irrelevant to the Constitutional analysis. Importantly, just as in the D. Mass. Action, DLI has put forth no allegations or evidence that "ELMNT advertised its products in [Florida], or that ELMNT maintains any offices, agents, or employees in [Florida]" or "that

[1] DLI does not allege that this Court has general personal jurisdiction over ELMNT; nor could it, as DLI's allegations fall far short of showing that ELMNT's contacts are "so 'continuous and systematic' as to render [ELMNT] essentially at home in [Florida]." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).

ELMNT knew that [DLI] existed or that it had a location in [Florida]." D. Mass. Action, D.E. 29. Thus, DLI "has not shown ELMNT purposefully availed itself in [Florida]" any more than it showed ELMNT purposefully availed itself in Massachusetts, and the Complaint should be dismissed for the same reasons. *Id.*

**2. Personal Jurisdiction Violates Due Process**

Even ignoring the court's decision in the D. Mass. Action, DLI has failed to carry its burden of showing that Due Process considerations are satisfied here. "The Constitution prohibits the exercise of personal jurisdiction over a non-resident defendant unless the defendant has fair warning that it may be haled into court in that particular forum." *DCS Real Estate Investments, LLC v. Bella Collina Events, LLC*, C.A. No. 5:14-cv-678-JSM-PRL, 2015 WL 628586, at *2 (M.D. Fla. Feb. 12, 2015). "Specifically, the defendant must have 'purposefully directed' its activities at residents of the forum and the litigation must result from alleged injuries that 'arise out of or relate to' those activities. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S 462, 472 (1985); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). In cases like this one, involving intentional tort allegations, the "effects" test—first articulated by the Supreme Court in *Calder v. Jones*,[2] and later refined in *Walden v.*

[2] 465 U.S. 783 (1984).

*Fiore*[3]—governs. Under the effects test, "a state can exercise personal jurisdiction over a non-resident if the non-resident commits an intentional tort 'that was directly aimed at the [forum state] and caused an injury within the [forum state] that the defendant reasonably should have anticipated.'" *Volt, LLC v. Volt Lightning Grp. LLC*, 369 F. Supp. 3d 1241, 1247 (M.D. Fla. 2019) (quoting *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 n.28 (11th Cir. 2009). However, "'the analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.'" *Avow Hospice, Inc. v. Avow Foundation for Abortion Access, Inc.*, C.A. No. 2:23-cv-132-SPC-KCD, 2023 WL 8878221, *3 (M.D. Fla. Dec. 22, 2023) (Chappell, J.) (quoting *Walden*, 571 U.S. at 285).

DLI's allegations here fall far short of establishing personal jurisdiction under this standard. DLI puts forth the following assertions in support of jurisdiction: (1) "ELMNT has purposefully availed itself of the privilege of conducting business in Florida by marketing, promoting, offering for sale, and selling dietary and nutritional supplements bearing the [Allegedly Infringing Marks] to Florida customers . . . through its interactive website and through online retail platforms such as Amazon and Walmart.com" (Compl. ¶ 12); (2) "ELMNT's website is expressly configured to target and serve Florida residents" (*id.* ¶ 13); (3) "Florida residents can and do

[3] 571 U.S. 277 (2014).

purchase the infringing products directly from the site (*id.*); (4) "ELMNT has made numerous sales of infringing products to Florida purchasers" (*id.* ¶ 14); and (5) "ELMNT has generated substantial revenue from sales of products featuring the infringing marks to consumers in Florida." (*Id.* ¶ 16.)

As an initial matter, several of these allegations are factually incorrect—for instance, ELMNT's website is not "expressly configured to target and serve Florida residents," but rather is configured to ship products nationwide with no specific focus on any state. (*See* Declaration of Wesley Marriott ("Marriott Decl.") ¶ 4.) Nor has ELMNT generated "substantial revenue" from sales to Florida consumers. (*See id.* ¶ 16.) DLI has not put forth any evidence—nor can it—supporting these allegations, and they should not be credited for purposes of this 12(b)(2) motion.

Moreover, even if these allegations were supported by evidence, they have little, if any, bearing on the *Calder* effects test as clarified by *Walden*. As discussed above, under this test DLI must show that ELMNT *intentionally* directed its activities at Florida, focusing on ELMNT's contacts with the state itself, rather than its residents. *See, e.g.*, *Calder*, 465 U.S. at 789-90; *Walden*, 571 U.S. at 285. DLI has included no allegations indicating that this was the case. For instance, there are no plausible allegations that ELMNT has specifically directed any business to Florida; that ELMNT has purposefully advertised in Florida; that ELMNT sells its products in brick-and-mortar stores in Florida; that ELMNT maintains any offices,

agents, or employees in Florida; that ELMNT has a contractual relationship with any Florida entity; that ELMNT is registered to do business in Florida; or that ELMNT works with a distributor who specifically services Florida. Nor could there be any such allegations, as ELMNT has no specific or particular relationship with Florida, nor has it ever purposefully directed business to Florida. (*See* Marriott Decl. ¶¶ 5-14.) Indeed, ELMNT was not even aware that DLI's principal place of business was in Florida prior to DLI's filing of the D. Mass. Action. (*Id.* ¶ 15).

In short, DLI's personal jurisdiction allegations amount to accusations that ELMNT operates a website accessible in Florida, and that some small portion of ELMNT's sales have been shipped to Florida addresses. Such allegations are insufficient for DLI to carry its burden to show that personal jurisdiction can be exercised here. *See, e.g.*, *Volt*, 369 F. Supp. 3d at 1247-48 (finding no personal jurisdiction where plaintiff "fails to show that [defendant] 'directly aimed' the allegedly infringing website at Florida" and where there were only "limited sales to Florida"); *DCS Real Estate Investments*, 2015 WL 628586, at *2 (no personal jurisdiction where defendant "did not target any behaviors at Florida in conjunction" with allegedly infringing activities); *Goforit Enter. LLC v. Digimedia.com L.P.*, 513 F. Supp. 2d 1325, 1330 (M.D. Fla. 2007) (holding that "the fact that Defendants' websites are equally accessible everywhere" "cuts against" personal jurisdiction).

More broadly, crediting DLI's jurisdictional position would be akin to

exposing every online retailer to personal jurisdiction—at least for purposes of trademark infringement claims—in every court in the nation, provided that at least a few sales had taken place in that state. "'The creation of such *de facto* universal jurisdiction runs counter to the approach the Court has followed since *International Shoe*.'" *Avow Hospice, Inc.*, 2023 WL 8878221, *3 (quoting *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801-02 (7th Cir. 2014).)

**B. DLI Has Failed to Adequately Allege Likelihood of Confusion**

Independent of Plaintiff's failure to carry its burden with respect to personal jurisdiction, the Complaint is subject to complete dismissal on the grounds that it fails to state a claim for relief. Specifically, DLI has failed to plausibly allege a likelihood of confusion between its Mark and the Allegedly Infringing Marks and thus cannot support any of the causes of action in the Complaint.

To succeed on a claim of trademark infringement, a plaintiff must show (1) that it has enforceable rights in its purported mark, and (2) that the defendant's mark is likely to cause consumer confusion. *See, e.g.*, *Florida Int'l Univ. Bd. of Trustees v. Florida National Univ.*, 830 F.3d 1242, 1255 (11th Cir. 2016) (hereinafter "*FIU*"). Indeed, it is well-established that "[t]he touchstone of liability in a trademark infringement action is not simply whether there is unauthorized use of a protected mark, but whether such use is likely to cause consumer confusion." *Crystal Entm't*

*& Filmworks Inc. v. Jurado*, 643 F.3d 1313, 1323 (11th Cir. 2011) (citing *Custom Mfg. & Eng'g, Inc. v. Midway Servcs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007)). This same likelihood of confusion standard applies to Plaintiff's federal and state unfair competition claims. *See, e.g.*, *Custom Mtg.*, 508 F.3d at 647, 652-53.[4]

Courts in this circuit typically consider the following seven factors when assessing the likelihood of confusion:

> (1) the strength of the allegedly infringed mark; (2) the similarity of the infringed and infringing marks; (3) the similarity of the goods and services the marks represent; (4) the similarity of the parties' trade channels and customers; (5) the similarity of advertising media used by the parties; (6) the intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public.

*FIU*, 830 F.3d at 1255. "Of these factors, the type of mark and the evidence of actual confusion are the most important." *Id.*; *see also Freedom Sav. & Loan Ass'n v. Way*, 757 F.2d 1176, 1186 (11th Cir. 1985).

Although likelihood of confusion is a question of fact, courts will grant a motion to dismiss on such grounds if an inference of likelihood of confusion would clearly be unreasonable in light of the allegations, or if a plaintiff has otherwise failed to plausibly allege confusion. *See, e.g.*, *Duro Beam, LLC v. Manning*, C.A. No. 24-

[4] Count IV seeks cancellation of the ELMNT Registration, but cancellation of a registration is a remedy and "not a standalone claim." *See, e.g.*, *Inkit, Inc. v. Nitex UK Ltd.*, C.A. No. 8:23-cv-02023-FWS-DFM, 2024 WL 3915162, at *5 (C.D. Cal. July 19, 2024); *see also* 15 U.S.C. § 1119. Thus, Count IV should also be dismissed for this reason. Even if cancellation could be asserted as a separate claim, it would be subject to the same likelihood of confusion standard, as it is premised on purported confusion with DLI's Mark (*see* Compl. ¶ 82).

CV-81550-WPD-BER, 2025 WL 2416413, at *6 (S.D. Fla. Aug. 21, 2025) (dismissing trademark infringement claim where "[t]he only allegations of customer confusion are factually-unsupported and conclusory"); *D.B.C. Corp. v. Nucita Venezolana, C.A.*, 464 F. Supp. 3d 1323, 1329 (S.D. Fla. 2020) (dismissing trademark infringement claim as conclusory and noting that such claims fail "'even the liberal standard of Rule 12(b)(6)' when they 'consist[ed] of conclusory allegations unsupported by factual assertions'") (quoting *Dow Jones & Co, Inc. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 307 (2d Cir. 2006)). Indeed, the Supreme Court recently—and unanimously—recognized that some trademark infringement complaints "will not present any plausible likelihood of confusion—because of dissimilarity in the marks or various contextual considerations," and that if "a plaintiff fails to plausibly allege a likelihood of confusion, the district court ***should dismiss*** the complaint under Federal Rule of Civil Procedure 12(b)(6)." *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 157 n.2 (2023).

Here, DLI has failed to plausibly allege a likelihood of confusion and thus its Complaint should be dismissed in its entirety.

**1. Strength of DLI's Mark**

The Eleventh Circuit "has long recognized that the extent of third-party use of a mark is an essential factor in determining a mark's strength." *FIU*, 830 F.3d at 1257; *see also Freedom Sav. & Loan Ass'n*, 757 F.2d at 1182 ("If a name is used by

third parties other than the infringer, then it is less strongly protected than it would be otherwise."); 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:85 (4th ed. 2004) ("A mark that is hemmed in on all sides by similar marks on similar goods or services cannot be very 'distinctive.'") (hereinafter, "McCarthy"). Here, DLI's Mark exists in a crowded field, and thus it cannot plausibly allege that its mark is strong.

For example, the mark "ELEMENT"[5] or variations thereof appears in at least 14 live U.S. Trademark Registrations for "supplements" or similar products, many of which predate DLI's use. (*See* Lamb Decl. Ex. C.)[6] Indeed, several of these registrations either directly overlap with DLI's goods or are much closer to DLI's goods than those offered by ELMNT—for example, the mark "ELEM3NTS" for "Flavored vitamin drink mixes" and "liquid nutritional supplements" and the mark "ALCAMI ELEMENTS" for "Dietary supplement drink mixes." (*See id.*, Exs. E, F.) Further, the mark "LMNT" itself appears in at least 7 live U.S. Trademark Registrations, including a registration for a nearly identical configuration of the letters in a square pattern surrounded by a square outline. (*See id.*, Ex. D.) While many of these registrations cover goods and services that differ from DLI's offerings,

[5] To the extent DLI argues that "ELEMENT" and "ELEMENT"-formative registrations do not dilute the strength of its mark as they include additional letters, such argument only undercuts DLI's position that "ELMNT" is confusingly similar to "LMNT."

[6] The Court may take judicial notice of the information available on the U.S. Patent and Trademark Office website. *See, e.g.*, *RGF Environmental Grp., Inc. v. Activ Tek Environmental Corp.*, C.A. No. 08-cv-80682-WPD , 2009 WL 10666940, at *3 (S.D. Fla. July 17, 2009).

several cover goods in the beauty and wellness field, and are thus at least as closely related to DLI's goods as are ELMNT's. (*See id.*, pg. 2 (including LMNT registrations for cosmetics, skin care, and anti-aging products).)

These extensive third-party uses are sufficient as a matter of law to classify DLI's Mark as weak. *See, e.g.*, *FIU*, 830 F.3d at 1258 ("Twelve third-party uses can be sufficient to diminish the distinctiveness of a mark."); *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1539 (11th Cir. 1986) (extending "less protection" to trade dress where eight third parties used similar elements); *Homes & Land Affiliates, LLC v. Homes & Loans Magazine, LLC*, 598 F. Supp. 2d 1248, 1261 (M.D. Fla. 2009) (finding "widespread third-party use" based on eighteen instances). Thus, this factor cuts against a likelihood of confusion finding and undermines the plausibility of DLI's allegations. *See, e.g.*, *Welding Servs. v. Forman*, 509 F.3d 1351, 1361 (11th Cir. 2007) (noting that a weak mark is "entitled to very little protection (if any)").

**2. Similarity of the Marks**

In assessing similarity, the Eleventh Circuit has instructed district courts to "consider the overall impression created by the marks, and [to] not simply compare isolated features." *FIU*, 830 F.3d at 1260. "Relevant points of comparison include 'the appearance, sound and meaning of the marks, as well as the manner in which the marks are used.'" *Id.* (quoting *John H. Harland Co. v Clarke Checks, Inc.*, 711 F.2d 966, 975 (11th Cir. 1983). This inquiry "must consider 'the operative facts of

the real world' and 'the performance of the marks in the commercial context'" and thus marks should not be simply compared side-by-side, but rather in light of what occurs in the marketplace. *Custom Mfg.*, 508 F.3d at 652 (quoting *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1106 (6th Cir. 1991)).

Under this standard, it is clear that DLI has failed to adequately allege similarity between its Mark and the Allegedly Infringing Marks sufficient to support a likelihood of confusion finding. As an initial matter, apart from rote recitations of the elements of its causes of action, Plaintiff does not, in fact, allege anywhere in the Complaint that the marks are similar. Nor would such allegations be plausible, even if they were made, when considering the "appearance, sound and meaning" of the marks, and how the marks are used in the marketplace.

Most notably, DLI's Mark is presented with its letters in white font arranged in a square, surrounded by a square outline (*see* Compl. ¶¶ 28, 38), whereas the TERRA ELMNT Mark—the primary mark used by ELMNT—is presented with the "ELMNT" portion in a straight line in bold, gold font, and the "TERRA" portion appearing in smaller font directly above it. (*See id.* ¶¶ 3-4, 33, 38). Furthermore, the packaging featuring the Marks differ substantially, with DLI's Mark appearing on light colored individual serving packets, and the TERRA ELMNT Mark appearing on large black tubs. (*See id.* ¶¶ 3-4, 38). These differences in the Marks' respective presentations undercut any assertion of likelihood of confusion.

These differences are particularly important here, where (as noted above) DLI's Mark exists in a crowded field—with many third parties using similar marks. In such circumstances, consumers are more trained to expect slight alterations to indicate that the goods come from separate sources, making confusion even less likely. *See, e.g.*, *FIU*, 830 F.3d at 1260 ("If a trademark operates in a crowded field of 'similar marks on similar goods or services,' slight differences in names may be meaningful because consumers 'will not likely be confused between any two of the crowd and may have learned to carefully pick out on from the other.'") (quoting McCarthy § 11:85); *Freedom Sav. & Loan Ass'n*, 757 F.2d at 1183 (noting that since "the primary word was weakly protected to begin with, minor alterations could effectively negate any confusing similarity between the two").

Moreover, as DLI explicitly alleges, ELMNT does not just use the term "ELMNT" on its own but rather labels its products with the "TERRA ELMNT" Mark and refers to itself using the "ELMNT HEALTH" Mark. (*See, e.g.*, Compl. ¶¶ 3-4.) These additional phrases further differentiate the Allegedly Infringing Marks and make confusion even less likely. And any attempt by DLI to rely on the purported similarity between the terms "LMNT" and "ELMNT" standing alone is misguided, as such argument would be based on a comparison of "isolated features" rather than the "overall impression" of the Marks as a whole. *FIU*, 830 F.3d at 1260

Accordingly, DLI has failed to plausibly allege similarities between the marks

supporting an inference of likelihood of confusion.

### 3. Similarity of the Goods

DLI again fails at the outset as it does not actually allege that the goods sold by it and ELMNT are similar, and instead leaves it for the Court to surmise that its "electrolyte supplement drink mixes and beverages" are similar to ELMNT's "dietary and nutritional supplements." (Compl. ¶¶ 2, 21.) While DLI characterizes both types of products broadly as "supplements," a comparison of the actual products set forth in the Complaint reveals substantial differences.

As alleged by DLI, the products it sells under the Mark exclusively consist of or relate to powdered drink mixes used as either a dietary/nutritional supplement or for electrolyte replacement. (*See* Compl. ¶¶ 20-21, 25, 28, 38.) Conversely, the products sold by ELMNT include: (i) Lion's Mane Mushroom Brain Booster; (ii) Testosterone; (iii) Maca Pills; (iv) Magnesium L-Threonate; (v) Collagen Burn; and (vi) Tongkat Ali. (Compl. ¶¶ 3-4, 33, 38.) Thus, while both categories of products can be generally described as "supplements," they are certainly not the same, nor are they interchangeable, used for similar purposes, or related. And, again, it is DLI's burden to plausibly allege similarity in the goods, which it has not done here.

Thus, DLI has not set forth plausible allegations from which a conclusion of likely confusion can be drawn based on the purported similarity of the goods.

**4. Similarity of Trade Channels, Advertising, and Customers**

This factor "takes into consideration where, how, and to whom the parties' products are sold," with "[d]issimilarities between the manner of sale and the typical customers of the parties' services lessen[ing] the possibility of confusion." *FIU*, 830 F.3d at 1261 (citing *Frehling Enter., Inc. v Int'l Select Grp., Inc.*, 192 F.3d 1330, 1339 (11th Cir. 1999)).

With respect to channels of trade and advertising, DLI alleges that it "sells its products through on-line channels of trade such as its own website, Amazon, and Walmart.com, but also through 'brick and mortar' stores such as Walmart and The Vitamin Shoppe" (Compl. ¶ 26), and that ELMNT "uses its own website, Amazon, and Walmart.com to promote and sell its products under" the Allegedly Infringing Marks. (*Id*. ¶ 37.) Thus, the only alleged overlap between the parties' respective channels of trade and advertising is Amazon and Walmart.com. However, as courts have repeatedly recognized, "'that the goods or services of the parties are both found on the Internet proves little, if anything, about the likelihood that consumers will confuse similar marks used on such goods or services.'" *Savannah College of Art & Design, inc. v. Sportswear, Inc.*, 983 F.3d 1273, 1284 (11th Cir. 2020) (affirming district court and quoting McCarthy, § 24:53.50); *see also Earth, Wind & Fire IP, LLC v. Substantial Music Grp. LLC*, 720 F. Supp. 3d 1261, 1284-85 (M.D. Fla. 2024) (noting that "given the broad use of the Internet, the fact that both parties

advertise on the Internet merits little weight" and finding that parties' separate webpages and social media presence "actually would lead consumers to believe the two [parties] are distinct enterprises"). Further, DLI's goods are also sold in physical locations, whereas ELMNT's goods are not, further differentiating the channels of trade and advertising. (*See* Compl. ¶¶ 26, 37.) Accordingly, DLI has not—and cannot—plausibly allege that there is overlap between the parties' respective channels of trade or advertising sufficient to create a likelihood of confusion.[7]

With respect to prospective purchasers, DLI explicitly alleges that both parties

---

[7] DLI includes in the Complaint a purported screenshot from Walmart.com, taken from Exhibit 8 to the Complaint, which DLI uses to support its allegation that "[DLI's] and [ELMNT's] products are placed in immediate proximity to each other on the [Walmart.com] website, increasing the likelihood of consumer confusion." (Compl. ¶ 38.) This screenshot and exhibit are problematic for several reasons. First, despite representing to the Court that the website was "last visited November 5, 2025" (*id.*) the screenshot and Exhibit are the exact same as those submitted in the D. Mass. Action in March. In fact, Exhibit 8 plainly indicates on its face that it was created on March 13, 2025. (*See* DE 1-8.) Second, as ELMNT highlighted in its motion to dismiss the D. Mass. Action (*see* D. Mass. Action, DE 17 at 16 n.7), the search run by DLI (in March, 2025) does not appear to have been conducted in "incognito mode" or in a similar manner that ensures prior search history and existing cookies do not impact the search results. When the same search was run in Google Chrome using a new incognito mode tab, the LMNT product did not appear as part of the search results. (*See id.*) And when this same incognito mode search was run again on November 7, 2025, the LMNT product similarly was not included in the results. (Lamb Decl. Ex. B.) Thus, despite having previously been informed of the issues with the screenshot and Exhibit 8, LMNT included the same misleading allegations in its Complaint here. Moreover, it did not even attempt to provide an updated screenshot/Exhibit, despite suggesting in its pleading that the screenshot and Exhibit were created on November 5, 2025.

Accordingly, although it is not necessary to resolve this motion, ELMNT respectfully submits that the Court should disregard the screenshot and Exhibit 8 as not providing any plausible or credible evidence, given the above issues. *Cf. Naples Screen Repair, LLC v. Arrow Handyman "LLC"*, C.A. No. 2:20-cv-844-FtM-SPC-NPM, 2021 WL 75124, at *3 (M.D. Fla. Jan. 9, 2021) (noting "[t]he reality that search results can vary based on an internet browser's stored cookies, location data, paid advertising, and user information," and finding such results unsuitable for judicial notice) (Chappell, J.).

target their products toward athletes and "individuals looking to improve their health and performance through supplements." (*Id.* ¶¶ 27, 36.) Rather than support confusion, however, such allegations undercut Plaintiff's position, as "[t]hese types of individuals are among the most sophisticated of consumers because they are conscientious in the nutrition choices that they make and carefully read labels." *Nature's Best, Inc. v. Ultimate Nutrition, Inc.*, 323 F. Supp. 2d 429, 434 (E.D.N.Y. 2004). As the Eleventh Circuit has recognized, customers who "have invested significant time into becoming well-informed due to the nature of the purchase are more likely to distinguish between similar marks and thereby avoid becoming confused." *FCOA LLC v. Foremost Title & Escrow Servs. LLC*, 57 F.4th 939, 957 (11th Cir. 2023) (citing *Freedom Savings & Loan Ass'n*, 757 F.2d at 1184-85).

The court's decision in *Nature's Best* is instructive. There, the court was determining whether the plaintiff had shown a likelihood of confusion between the marks "Isopure" as used in connection with "food supplements in powdered drink mix and beverage form," and "Isopreme" as used in connection with "dietary supplements." *Id.* at 430. In finding no likelihood of confusion, the court focused on the sophistication of the target market, noting that "it seems highly unlikely that confusion between these two nutritional supplements will occur when it is precisely the nutritional aspect of the product that is of greatest significance to the buyers in question," and that "it is clear that a careful and informed decision would accompany

any purchase of Isopure or Isopreme and as a result, the likelihood of confusion is exceedingly low." *Id.* at 434; *see also Katz v. Modiri*, 283 F. Supp. 2d 883, 898 (S.D.N.Y. 2003) (noting that consumers selecting products that "affect their physical appearance and health" are "likely to exercise a great deal of care").

As with the plaintiff in *Nature's Best*, DLI's allegations here directly undercut its assertions of a likelihood of confusion. Because, as DLI alleges, both parties target a sophisticated class of consumers focused on their health and wellness, with products directly impacting those aspects of consumers' lives, it is unlikely that such consumers will be confused.

#### 5. ELMNT's Intent In Adopting the Mark

Again, DLI offers no allegation concerning ELMNT's purported bad faith in adopting the Allegedly Infringing Marks. At most, DLI alleges that ELMNT continued to use the Allegedly Infringing Marks after receiving DLI's cease and desist letter and thus is "willfully attempting to utilize [DLI's] earned goodwill in its [Mark] as ELMNT's own." (Compl. ¶ 41; *see also id.* ¶ 4.) However, this factor requires a showing that "the defendant *adopted* a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation," and thus whether ELMNT continued to use the Mark has no bearing on its intent. *Frehling Enters.*, 192 F.3d at 1340. Indeed, even when a defendant has prior knowledge of the plaintiff's mark *before* adopting its own—which DLI does not allege here—such

facts do not give rise to an inference of bad faith. *See, e.g.*, *Michael Caruso & Co., Inc. v. Estefan Enterp., Inc.*, 994 F. Supp. 1454, 1462 (S.D. Fla. 1998).

### 6. Evidence of Actual Confusion

"Evidence of confusion by actual or potential customers is, of course, the best evidence of a likelihood of confusion." *FIU*, 830 F.3d at 1264. Here, DLI alleges that the marks have coexisted in the marketplace for nearly four years. (*See* Compl. ¶ 78.) Notwithstanding this coexistence, DLI does not point to or allege a single instance of actual confusion; nor, seemingly, could DLI do so—consistent with its Rule 11 obligations—given that ELMNT highlighted this issue in its motion to dismiss the D. Mass. Action and DLI still failed to allege actual confusion. Such a failure of pleading significantly undermines the plausibility of DLI's claims.

* * *

Given DLI's complete lack of allegations concerning actual confusion (the most important likelihood of confusion factor), the indisputable fact that DLI's mark exists in a crowded field and is therefore weak (the second most important factor), and the fact that the remaining factors disfavor confusion, DLI cannot plausibly allege likelihood of confusion here. Accordingly, its Complaint cannot withstand scrutiny under the *Iqbal/Twombly* standard and must be dismissed.

### C. ELMNT's Trademark Registration Further Undermines DLI's Position

DLI affirmatively alleges that (i) ELMNT owns a U.S. Trademark

Registration covering the mark TERRA ELMNT for "Dietary and nutritional supplements" (Compl. ¶ 78); and (ii) this mark registered after DLI first used its Mark, and after at least some of DLI's own registrations had issued. (*Id.* ¶¶ 20, 28, 79.) As DLI itself recognizes, a trademark registration is "prima facie evidence of validity" of the mark and of the registrant's right to use the mark. (Compl. ¶ 47 (citing 15 U.S.C. § 1115).) Moreover, in connection with the registration of the TERRA ELMNT mark, the USPTO explicitly stated that "The trademark examining attorney searched the USPTO database of registered and pending marks and found *no conflicting marks* that would bar registration under the Trademark Act Section 2(d)." (Lamb Decl. Ex. G, pg. 2.) In other words, the USPTO determined that there was no likelihood of confusion between the TERRA ELMNT mark and any other existing registered mark or application, including those owned by DLI.

Accordingly, DLI's burden to plausibly plead likely confusion is even greater here, and as demonstrated above, it has not come close to satisfying such burden.

## V. CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Complaint be dismissed in its entirety and without leave to amend.

Dated: December 5, 2025

By: *David M. Lamb*
David M. Lamb

David M. Lamb (*pro hac vice* application forthcoming)
david.lamb@gishpllc.com
GISH PLLC
41 Madison Ave., 31st Floor
New York, NY 10010
(212) 518-7380

Matthew S. Nelles
Florida Bar No. 009245
matt.nelles@johnsonmartinlaw.com
JOHNSON & MARTIN, P.A.
500 West Cypress Creek Road
Suite 430
Fort Lauderdale, FL 33309
(954) 790-6700

*Counsel for Defendant*

## LOCAL RULE 3.01(g) CERTIFICATE

Pursuant to Local Rule 3.01(g)(2), I hereby certify that counsel for defendant conferred with counsel for plaintiff in a good faith effort to resolve the foregoing motion. This conference occurred via Zoom teleconference on November 25, 2025. Despite the parties' good faith efforts, the parties did not agree on the resolution of all or part of the motion.

Dated: December 5, 2025

By: *David M. Lamb*
David M. Lamb

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document filed today through the Court's CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: December 5, 2025

By: *David M. Lamb*
David M. Lamb