**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

| | |
|---|---|
| DRINK LMNT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ELMNT, LLC,<br><br>Defendant. | Civil Action No. 2:25-cv-01018-SPC-DNF |

**PLAINTIFF DRINK LMNT, INC.'S**
**<u>OPPOSITION TO ELMNT, LLC'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS


I. Introduction ..... 1

II. Factual and Procedural Background ..... 2

A. Underlying Facts ..... 2

B. Procedural History ..... 4

III. Argument ..... 4

A. The Court Has Personal Jurisdiction Over ELMNT ..... 4

1. The Legal Standard for a Rule 12(b)(2) Motion to Dismiss ..... 4

2. The Florida Long-Arm Statute Is Satisfied ..... 5

3. Exercising Jurisdiction Comports with Due Process ..... 7

a. The Claims Arise Out of or Relate to ELMNT's Contacts with Florida ..... 7

b. ELMNT Purposefully Avails Itself of the Privilege of Conducting Business Activities in Florida ..... 8

c. Exercising Jurisdiction Comports with Traditional Notions of Fair Play and Substantial Justice ..... 12

4. Should Further Factual Development Be Required, Jurisdictional Discovery Is Warranted ..... 13

B. The Complaint Plausibly Alleges Likelihood of Confusion ..... 14

1. The Rule 12(b)(6) Legal Standard for a Motion to Dismiss ..... 14

2. LMNT Has More Than Met the Pleading Standard ..... 15

3. The Complaint Plausibly Alleges Likelihood of Confusion Under the Factors Used by the Eleventh Circuit ..... 16

IV. Conclusion ..... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance Metals, Inc. v. Hinely Indus., Inc.*,
222 F.3d 895 (11th Cir. 2000) ... 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 14, 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ... 15

*Bogart, LLC v. Ashley Furniture Indus., Inc.*,
No. 3:10-CV-39 CDL, 2012 WL 3745833 (M.D. Ga. Aug. 28, 2012) ... 6

*Burger King Corp. v. Rudzewicz*,
471 U.S 462 (1985) ... 12, 13

*Calder v. Jones*,
465 U.S. 783 (1984) ... 8, 9, 20

*Del Valle v. Trivago GmbH*,
56 F.4th 1265 (11th Cir. 2022) ... 7, 8, 9

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*,
593 F.3d 1249 (11th Cir. 2010) ... 7

*Eaton v. Dorchester Development, Inc.*,
692 F.2d 727 (11th Cir. 1982) ... 13

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
141 S. Ct. 1017 (2021) ... 7

*Frehling Enters., Inc. v. Int'l Select Grp., Inc.*,
192 F.3d 1330 (11th Cir. 1999) ... 18

*Gencor Indus., Inc. v. Gencor Pac. Ltd.*,
No. 6:23-CV-221-RBD-RMN, 2023 WL 11762581 (M.D. Fla. Dec. 14, 2023) ... 8, 12, 15

*Herring v. Sec'y, Dep't of Corr.*,
397 F.3d 1338 (11th Cir. 2005) ... 6

*ICON Health & Fitness, Inc. v. IFITNESS, Inc.*,
No. 12-20125-CIV, 2012 WL 1120925 (S.D. Fla. Apr. 3, 2012) .................. 17, 20

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945) ........................................................................ 12

*Licciardello v. Lovelady*,
544 F.3d 1280 (11th Cir. 2008) ........................................................ 9, 11, 13

*Louis Vuitton* v. *Mosseri*,
736 F.3d 1339 (11th Cir. 2013) ........................................................ *passim*

*Madara v. Hall*,
916 F.2d 1510 (11th Cir. 1990) ........................................................ 5

*Marco's Franchising, LLC v. Marco's Italian Exp., Inc.*,
No. 8:06-cv-00670-T-17-TGW, 2007 WL 2028845 (M.D. Fla. July 9, 2007) ........................................................................ 15

*Meier* v. *Sun Int'l Hotels*,
288 F.3d 1264 (11th Cir. 2002) ........................................................ 4, 5

*Mighty Men of God, Inc. v. World Outreach Church of Murfreesboro Tennessee, Inc.*,
102 F. Supp. 3d 1264 (M.D. Fla. 2015) ................................................ 6, 10, 12

*Moccio v. Bossbabe Societe, Inc.*,
No. 8:21-CV-0210-KKM-AEP, 2021 WL 4847034 (M.D. Fla. Oct. 18, 2021) ........................................................................ 5

*Posner* v. *Essex Ins.*,
178 F.3d 1209 (11th Cir. 1999) ........................................................ 5

*Roca Labs, Inc. v. Boogie Media, LLC*,
No. 8:12-CV-2231-T-33EAJ, 2013 WL 2025806 (M.D. Fla. May 14, 2013) ........................................................................ 11, 12

*Sapuppo v. Allstate Floridian Ins. Co.*,
739 F.3d 678 (11th Cir. 2014) ........................................................ 6

*Singh v. U.S. Atty. Gen.*,
561 F.3d 1275 (11th Cir. 2009) ........................................................ 6

*Suntree Techs., Inc. v. Ecosense Int'l, Inc.*,
693 F.3d 1338 (11th Cir. 2012) ........................................................ 15

*United Techs. Corp. v. Mazer*,
556 F.3d 1260 (11th Cir. 2009)........................................................................ 15

*UnitedHealthcare of Fla., Inc. v. Am. Renal Assocs. Holdings, Inc.*,
No. 16-81180-CIV, 2016 WL 8794534 (S.D. Fla. Dec. 5, 2016)........................ 13

*Volt, LLC v. Volt Lightning Grp. LLC*,
369 F. Supp. 3d 1241 (M.D. Fla. 2019) ........................................................... 11

*Walden v. Fiore*,
571 U.S. 277 (2014) .......................................................................................... 11

*Xymogen, Inc. v. Digitalev, LLC*,
No. 617-CV-869-ORL-31-KRS, 2018 WL 659723 (M.D. Fla. Feb. 1, 2018).................................................................................................10, 16

**Rules**

Fed. R. Civ. P. 8(a)(2) ....................................................................................... 15

Fed. R. Civ. P. 12(b)(2)......................................................................................1, 4

Fed. R. Civ. P. 12(b)(6)...................................................................................*passim*

**Statutes**

Fla. Stat. § 48.193(1)(a)(1)–(2)........................................................................5, 6

## I. Introduction

Plaintiff Drink LMNT, Inc. ("LMNT") hereby opposes Defendant ELMNT, LLC's ("ELMNT") motion to dismiss under Rules 12(b)(2) and 12(b)(6). LMNT's allegations—corroborated by sworn declarations—more than satisfy both the Florida long-arm statute and constitutional due process. The Complaint also satisfies the governing pleading standards by plausibly alleging a likelihood of confusion between the parties' marks, which is the sole basis for ELMNT's Rule 12(b)(6) challenge.

Even a single shipment into Florida of a product bearing an infringing mark can subject a defendant to personal jurisdiction arising from such an infringing sale. ELMNT's contacts with Florida are vastly more extensive than that. LMNT alleges[1] that ELMNT sells and ships substantial volumes of accused products directly to consumers in this District through its website and other e-commerce platforms, causing harm to LMNT (which is headquartered here). ELMNT also specifically targets Florida in its advertisements and promotional materials, and has even engaged in paid partnerships with Florida influencers on social media. Those allegations go far beyond "barebones" website accessibility. They establish the very kind of forum-related conduct that meets the Eleventh Circuit's requirements.

ELMNT fares no better on the merits. LMNT's Complaint sets forth detailed allegations that sufficiently allege priority, confusing similarity of the marks, overlapping product categories and sales channels, and harm to LMNT's brand.

[1] For purposes of a Rule 12 motion, the allegations must be taken as true; but in any event, as discussed below and established in the declarations, they are amply supported with evidence.

Despite ELMNT's notice of LMNT's rights, ELMNT continues to use its confusingly similar marks, which supports an inference of willfulness. In sum, these allegations more than suffice to plausibly allege a likelihood of confusion.

## II. Factual and Procedural Background

### A. Underlying Facts

Plaintiff LMNT (pronounced "Element" – a mark formed by removal of "E"s from the word "Element") markets and sells dietary supplements and drink mixes under its federally-registered LMNT mark, including to consumers in Florida. Complaint ("Compl.") (Dkt. 1 ¶¶ 18–20, 26–27). Since 2018, LMNT has invested heavily in building nationwide recognition of its brand, distributing its products through its own website and through online retailers such as Amazon and Walmart.com, as well as through brick-and-mortar retailers including Target, Walmart, and The Vitamin Shoppe. *Id.* ¶ 24. LMNT is headquartered in this District. *Id.* ¶ 18; Declaration of Jeffrey Brams ("Brams Decl.") (Dkt. 26 ¶ 7).

Defendant ELMNT (also pronounced "Element" and also formed by removal of "E"s from the word "Element") likewise markets and sells dietary supplements in Florida. Brams Decl. ¶¶ 15–18. It does so under the names "ELMNT," "ELMNT HEALTH," and "TERRA ELMNT," consistently emphasizing "ELMNT" as the dominant source-identifying term. Compl. ¶¶ 33-35. ELMNT's online store is configured to serve Florida customers: its checkout process allows users to select "Florida" as the shipping destination and automatically calculates Florida sales tax and shipping charges. *Id.* ¶ 13; Brams Decl. ¶ 13 & Ex. 1.

ELMNT sells and ships its products to consumers in Florida directly through its own interactive website, and through Amazon and Walmart.com where its products appear alongside those of LMNT. Compl. ¶¶ 13, 36–37; Brams Decl. ¶¶ 15–18, 22 & Exs. 2–3, 6. LMNT's declarations establish that ELMNT has shipped infringing products to multiple Florida addresses, over several dates, and through multiple sales platforms—both directly from its own website and via online retailers. Brams Decl. ¶¶ 15–18 & Exs. 2–3. These shipments, which bear the infringing "ELMNT" mark, reflect ELMNT's routine practice of directing commercial activity to Florida. Brams Decl. ¶ 24. By targeting the same category of consumers, ELMNT's conduct harms LMNT's goodwill and customer relationships—notably in Florida, where LMNT is headquartered. Compl. ¶¶ 18, 36, 42.

ELMNT's business relationship with Florida is not limited to product sales. ELMNT has also expressly directed its advertisements and promotions at Florida and Florida-based users, including through social media outlets, YouTube, and paid partnerships with content creators in this state. Brams Decl. ¶¶ 25–30. For example, ELMNT has publicly tagged "Miami, FL" as its location in multiple Instagram posts in 2024 and 2025 that advertise its infringing products. Brams Decl. ¶¶ 25–26 & Exs. 7–8. These advertisements are viewed and engaged with by users identifying themselves as located in Florida. *Id.* ¶ 27 & Ex. 9. ELMNT also has a paid partnership arrangement with a social media influencer who lists "FL" in his profile location, and whose Instagram Reel is expressly identified as a "paid partnership" with ELMNT. *Id.* ¶ 28 & Exs. 10–11. Moreover, a YouTube reviewer identifying

"FLORIDA" as his location posted a promotional video reviewing ELMNT's supplements with the hashtags #Elmnt and #productreview. *Id.* ¶ 30 & Ex. 13. Other Florida-based sellers sell ELMNT supplements on eBay as well. *Id.* ¶ 29 & Ex. 12.

### B. Procedural History

LMNT commenced this action on November 6, 2025, asserting trademark infringement and related claims arising from the likelihood of confusion between the parties' respective LMNT and ELMNT marks. On December 5, 2025, ELMNT moved to dismiss under Rules 12(b)(2) and 12(b)(6). LMNT opposes that motion, relying on its Complaint and the declarations of its General Counsel, Jeffrey Brams, and of investigators Jaime Matos ("Jaime Matos Decl.") (Dkt. 27) and Joel Matos ("Joel Matos Decl.") (Dkt. 28) (together, the "Matos Declarations"), and exhibits.

## III. Argument

### A. The Court Has Personal Jurisdiction Over ELMNT

ELMNT has deliberately engaged in substantial, revenue-generating contacts with this forum by intentionally selling, shipping, and promoting infringing products in and to Florida. The impact is felt by LMNT, which is headquartered here. Those acts satisfy Florida's long-arm statute, as well as the Eleventh Circuit's relatedness, purposeful availment, and reasonableness tests.

#### 1. The Legal Standard for a Rule 12(b)(2) Motion to Dismiss

Under Fed. R. Civ. P. 12(b)(2), LMNT need only make a prima facie showing of personal jurisdiction. *Meier* v. *Sun Int'l Hotels*, 288 F.3d 1264, 1268–69 (11th Cir. 2002). LMNT's jurisdictional allegations must be accepted as true absent competent

contrary evidence. *Posner* v. *Essex Ins.*, 178 F.3d 1209, 1215 (11th Cir. 1999). If the defendant offers only conclusory assertions of no jurisdiction, the burden does not shift back to Plaintiff. *Louis Vuitton* v. *Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). And where competing evidence conflicts, courts must "construe all reasonable inferences in favor of the plaintiff." *Meier*, 288 F.3d at 1269.

In the Eleventh Circuit, "[t]he determination of personal jurisdiction over a nonresident defendant requires a two-part analysis." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). First, there must be a basis for jurisdiction under Florida's long-arm statute, and second, the exercise of personal jurisdiction must comport with due process. *Madara*, 916 F.2d at 1516. Both tests are met here.

### 2. The Florida Long-Arm Statute Is Satisfied

Florida's long-arm statute extends specific jurisdiction to defendants who commit a tortious act in Florida or conduct business in the state. Either basis alone is sufficient. Fla. Stat. § 48.193(1)(a)(1)–(2); *Louis Vuitton*, 736 F.3d at 1352–53.

Here, ELMNT does both. LMNT plausibly alleges that ELMNT committed trademark infringement in Florida, Compl. at ¶¶ 12–15. Trademark infringement is a tortious act under the long-arm statute.[2] These allegations thus meet the long-arm statute. *See Moccio v. Bossbabe Societe, Inc.*, No. 8:21-CV-0210-KKM-AEP, 2021 WL 4847034, at *4 (M.D. Fla. Oct. 18, 2021) (long-arm statute met where Defendant "allegedly committed the intentional tort of trademark infringement in Florida").

[2] *See Louis Vuitton,* 736 F.3d at 1353.

LMNT also alleges that ELMNT has conducted business in the state. Taken together, the Complaint and supporting declarations satisfy both prongs of Fla. Stat. § 48.193(1)(a)(1)–(2), ***either*** of which alone meets Florida's long-arm statute.

Indeed, presumably for that reason, ELMNT apparently ***concedes*** this threshold requirement by offering no substantive arguments against it—an omission courts treat as waiver of the issue. *See, e.g., Mighty Men of God, Inc. v. World Outreach Church of Murfreesboro Tennessee, Inc.*, 102 F. Supp. 3d 1264, 1271 (M.D. Fla. 2015) (holding that defendants who "do not address whether Florida's long-arm statute permits the exercise of personal jurisdiction" thereby "concede that it does").

ELMNT makes only a cursory remark that it "disputes" jurisdiction under Florida's long-arm statute, without offering any supporting argument or analysis. Motion to Dismiss ("Motion") (Dkt. 18 at 7). Eleventh Circuit law is that a party "abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (collecting cases); *Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) ("[S]imply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue"). The waiver cannot be cured by raising the issue for the first time in a reply brief, since "[a]rguments raised for the first time in a reply brief" are waived. *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005). *See also Bogart, LLC v. Ashley Furniture Indus.*, Inc., No. 3:10-CV-39 CDL, 2012 WL 3745833, at *11 (M.D.

Ga. Aug. 28, 2012) (defendant's failure to argue against plaintiff's trademark claim in its opening brief abandoned the issue, and could not be first raised in a reply brief).

### 3. Exercising Jurisdiction Comports with Due Process

The Eleventh Circuit applies a three-part test to determine if the due process requirement is met: (1) relatedness, (2) purposeful availment, and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Del Valle v. Trivago GmbH*, 56 F.4th 1265, 1275 (11th Cir. 2022). The plaintiff bears the burden of establishing only the first two prongs. Once it does so, "defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010).

Under the prima facie standard, *see supra* § III.A.1, LMNT's jurisdictional allegations must be taken as true and all reasonable inferences drawn in its favor. LMNT's allegations and corroborating evidence more than meet the prima facie test.

#### a. The Claims Arise Out of or Relate to ELMNT's Contacts with Florida

The relatedness prong requires that the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026–30 (2021) (holding that jurisdiction exists where defendant's forum contacts relate to the claims, even if they are not the but-for cause); *Louis Vuitton*, 736 F.3d at 1355 (applying this rule in the Eleventh Circuit).

ELMNT does not contest the relatedness of LMNT's claims,[3] and has therefore waived this issue. *See* § III.A.2, *supra* (collecting cases).

In any event, LMNT's claims are directly related to ELMNT's Florida-directed conduct. As set forth in § II.A *supra,* ELMNT has purposefully offered, promoted, and shipped the accused products into Florida, and that conduct forms the basis of LMNT's likelihood of confusion claims. These Florida-specific transactions are the very acts that caused LMNT's injuries in this District.

Courts in this Circuit have consistently held that such forum-directed online activities satisfy relatedness. *See, e.g., Louis Vuitton*, 736 F.3d at 1356; *Gencor Indus., Inc. v. Gencor Pac. Ltd.*, No. 6:23-CV-221-RBD-RMN, 2023 WL 11762581, at *3 (M.D. Fla. Dec. 14, 2023) (finding Plaintiff met the relatedness prong "since [it] allege[d] a Florida-based injury").

**b. ELMNT Purposefully Avails Itself of the Privilege of Conducting Business Activities in Florida**

In assessing the second, "purposeful availment," prong, courts "identify all contacts between a nonresident defendant and a forum state and ask whether, individually or collectively, those contacts satisfy" that requirement. *Louis Vuitton*, 736 F.3d at 1357. For intentional torts such as trademark infringement, however, the

[3] ELMNT's motion addresses only the *Calder* "effects" test, which relates to the second prong of the due-process analysis—purposeful availment. *Calder* is discussed in § III.A.3.b, *infra*. For clarity, however, purposeful availment may be shown under ***either*** the *Calder* test ***or*** the traditional minimum-contacts framework; both are viable, independent avenues in the Eleventh Circuit. *See Del Valle v. Trivago GmbH*, 56 F.4th 1265, 1275 (11th Cir. 2022) (holding that "there are two applicable tests"). ELMNT fails to address the independently-applicable traditional "minimum contacts" framework, which is plainly met here by ELMNT's Florida sales.

"purposeful availment" prong may **also** be established under the alternative *Calder* "effects" test. *See Licciardello*, 544 F.3d at 1286 (applying the *Calder* test in a trademark infringement action). Under *Calder*, even "**a nonresident defendant's single tortious act can establish purposeful availment**, without regard to whether the defendant had any other contacts with the forum state." *Louis Vuitton*, 736 F.3d at 1356 (emphasis added). "This [happens] when the tort [is]: (1) . . . intentional; (2) . . . aimed at the forum state; and (3) caused harm . . . the defendant should have anticipated would be suffered in the forum state." *Id.*

Purposeful availment may be shown under ***either*** test; though here, ELMNT's conduct satisfies both. *See Del Valle v. Trivago*, 56 F.4th 1265, 1275 (11th Cir. 2022) (either test suffices). As to the first test, LMNT has catalogued above the extensive contacts that ELMNT has with Florida, including selling and promoting products bearing the accused marks to Florida consumers; offering Florida as a selectable shipping destination through its online store; distributing through stores that sell in Florida; and entering into a paid partnership with at least one Florida-based influencer. Compl. ¶¶ 13, 14; Brams Decl. ¶¶ 12-18, 22, 24, 28.[4]

But even if those contacts did not suffice, under the alternative *Calder* test there can be no doubt: ELMNT has undisputedly made numerous intentional sales of the

[4] Defendant's assertion that it does not promote, market, or sell to Florida consumers is contradicted by the record. Marriott Decl. ¶¶ 5, 13, 16; Brams Decl. ¶15-18, 22, 24-30; Joel Matos Decl. ¶¶ 3-7; Jaime Matos Decl. ¶¶ 3–7. LMNT's test purchases confirm that ELMNT processed and shipped the accused products into Florida, identifying "ELMNT" as the sender. Compl. ¶¶ 13-15; Brams Decl. ¶¶ 12–18. These are deliberate, revenue-generating contacts that far exceed the operation of a mere passive website. If any doubt remains, jurisdictional discovery should help resolve it.

accused products, bearing the accused trademark, into the state of Florida. Yet all that is needed to meet the test is a ***single*** such sale. *See Louis Vuitton*, 736 F.3d at 1356 (even a "single tortious act" suffices).

ELMNT also voluntarily places products into the Florida stream of commerce through Amazon and Walmart.com—platforms it selected knowing they sell and ship nationwide, including to Florida. *See* Compl. ¶¶ 37-38; Joel Matos Decl. ¶¶ 3-7; Jaime Matos Decl. ¶¶ 3-7. Its listings appear alongside LMNT's on Walmart.com,[5] placing the parties in direct competition for Florida consumers at the point of sale. Brams Decl. ¶ 22. Courts in this District routinely hold that similarly interactive online storefronts, direct shipments, and commercially targeted conduct show purposeful availment. *See Louis Vuitton*, 736 F.3d at 1357 (finding purposeful availment since Plaintiff's investigator completed a test purchase showing Defendant's website sold infringing products in Florida); *Xymogen, Inc. v. Digitalev, LLC*, No. 617-CV-869-ORL-31-KRS, 2018 WL 659723, at *3 (M.D. Fla. Feb. 1, 2018) (finding purposeful availment where defendant made infringing sales into Florida through its website); *Mighty Men of God, Inc.*, 102 F. Supp. 3d at 1275 (M.D. Fla. 2015) (distinguishing cases involving merely passive websites and finding purposeful availment where infringing merchandise was sold online); *see also*

[5] ELMNT asserts that its own search of Walmart.com did not display the parties' products side by side, and argues that the screenshots attached to the Complaint should be disregarded because they were not obtained in "incognito mode." (Motion at 21 n.7). That assertion is incorrect. Additional screenshots taken from Walmart.com with a Florida location selected—*again* in "incognito mode"—confirm that ELMNT's products still appeared side by side with LMNT's products as recently as December 9, 2025. Brams Decl. ¶ 22; *Id.* at Ex. 6.

*Licciardello*, 544 F.3d at 1287–88 (use of plaintiff's trademark and picture on defendant's website was sufficient to show purposeful availment); *Roca Labs, Inc. v. Boogie Media, LLC*, No. 8:12-CV-2231-T-33EAJ, 2013 WL 2025806, at *5–6 (M.D. Fla. May 14, 2013) (affidavit averring defendant had no physical presence in Florida and that its website was equally capable of being accessed anywhere failed to rebut the allegation that its website infringed plaintiff's mark and caused injury in Florida).

ELMNT's reliance on *Volt* is misplaced. There, jurisdiction was lacking because the defendant's website "included no mechanism to effect a purchase." 369 F. Supp. 3d at 1248. Here, ELMNT's website *does* effect purchases—including into Florida. Indeed, if lacking a physical store in the forum state could avoid jurisdiction, online companies such as ELMNT might not be subject to jurisdiction *anywhere*.

ELMNT's reliance on *Walden* is similarly misplaced because, unlike here, *Walden* involved no sales into the forum. *Walden v. Fiore*, 571 U.S. at 289–90 (defendant "never…sent anything or anyone to Nevada."). Indeed, *Walden* actually makes clear that physical presence is unnecessary where the defendant creates "contacts with the forum State" such as sending in goods. *Id.* at 285–86. What ELMNT did here is exactly what *Walden* says *does* establish jurisdiction.

Finally, ELMNT reasonably could have anticipated being haled into court in Florida, and that the harm from its actions would be suffered here. LMNT sent a demand letter in December 2023 placing ELMNT on notice of its infringement. Compl. ¶ 41. Yet ELMNT continued its business activities in, and sales into, Florida,

to the detriment of LMNT, a Florida company. *Id.* at 8, 18. ELMNT could thus reasonably anticipate suit here. *See Gencor*, *supra at* *4 (finding that defendant's harm could be anticipated in Florida, because defendants received and rejected a cease and desist letter from plaintiff, and "Defendants' websites were accessible in Florida, where [Plaintiff was] based"); *Roca Labs*, 2013 WL 2025806, at 6 (same).

**c. Exercising Jurisdiction Comports with Traditional Notions of Fair Play and Substantial Justice**

The third and final prong of the due process inquiry asks whether exercising jurisdiction comports with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. But once minimum contacts are established, the **burden shifts to the defendant** to "make a compelling case that the exercise of jurisdiction would violate" those notions. *Louis Vuitton*, 736 F.3d at 1355; *Burger King*, 471 U.S. at 477. ELMNT makes no such "compelling" showing. In fact, **it does not address this prong at all—thus waiving the issue**. *See* § III.A.3.b, *supra*; *see also Mighty Men of God*, 102 F. Supp. 3d at 1275 ("Defendants do not address the third prong, and for that reason, Defendants have failed to satisfy their burden.")

Even if Defendant had raised the "fair play" issue, it could not have met its burden. Courts weigh four fairness factors: (1) burden on the defendant (2) the forum's interest, (3) the plaintiff's interest in effective relief, and (4) judicial efficiency. *Louis Vuitton*, 736 F.3d at 1358. All favor jurisdiction here. ELMNT faces no meaningful burden litigating in a forum where it intentionally ships products and sponsors promoters, particularly given the availability of "modern [methods of]

transportation and communication," *Burger King*, 471 U.S. at 474. Florida has "a very strong interest" in stopping infringement that caused injury to a company headquartered here. *Licciardello*, 544 F.3d at 1288. And of course LMNT has such an interest. In short, even if it had not waived the issue, ELMNT could not have shown a lack of "fair play or substantial justice" in being subject to jurisdiction in Florida.

#### 4. Should Further Factual Development Be Required, Jurisdictional Discovery Is Warranted

For the above reasons, LMNT's allegations and supporting evidence more than suffice to establish personal jurisdiction over ELMNT. Out of an abundance of caution, however, LMNT has filed a "conditional motion" for jurisdictional discovery, in the event that the Court were to find the record to date insufficient. The Eleventh Circuit recognizes a plaintiff's right to conduct jurisdictional discovery if facts are in dispute that could be relevant to the jurisdictional analysis. *See Eaton v. Dorchester Development, Inc.*, 692 F.2d 727, 730 (11th Cir. 1982); *UnitedHealthcare of Fla., Inc. v. Am. Renal Assocs. Holdings, Inc.*, No. 16-81180-CIV, 2016 WL 8794534, at *2 (S.D. Fla. Dec. 5, 2016) (collecting cases).

ELMNT could have come forward with data about the volume of its sales in Florida, its business dealings here, etc. It chose not to. It does not actually deny that it ships substantial volumes of product into Florida, but it seeks to sidestep that issue by noting that Plaintiff is currently unable to quantify those sales (and other business relationships). But that is precisely why Eleventh Circuit law allows for jurisdictional discovery in the event that the above-catalogued evidence does not alone suffice.

### B. The Complaint Plausibly Alleges Likelihood of Confusion

Defendant's Rule 12(b)(6) arguments rest on a misreading of both the governing standard and the allegations. At this stage, LMNT need only plead facts that make its claims plausible, not prove its case in full. The Complaint does exactly that. It alleges LMNT's priority and ownership of the federally registered LMNT marks, confusing similarity between LMNT and ELMNT as the dominant terms, overlap in the parties' dietary supplement product lines, shared channels of trade, overlapping consumer bases, and ELMNT's continued and willful infringement of the marks, despite notice. For each of the four counts on which it moves to dismiss, ELMNT rests on the same argument, namely that LMNT has failed to adequately plead likelihood of confusion (an element common to each of those counts). This Section, accordingly, shows how likelihood of confusion *has* been sufficiently pled.

Taken together, LMNT's allegations state a classic Lanham Act infringement and unfair competition claim. Defendant's motion improperly asks the Court to weigh evidence and resolve factual disputes, but Rule 12(b)(6) requires only plausibility, leaving resolution of factual issues for a later stage. Because LMNT has more than cleared that bar, ELMNT's motion to dismiss should be denied.

#### 1. The Rule 12(b)(6) Legal Standard for a Motion to Dismiss

To survive a Rule 12(b)(6) motion, a complaint need only plead "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). Whether a plaintiff will ultimately prevail is a question for summary judgment or trial, not a Rule 12 motion.

### 2. LMNT Has More Than Met the Pleading Standard

Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To be "plausible" under *Iqbal* requires "more than labels and conclusions" but "does not impose a probability requirement." *Twombly*, 550 U.S. at 555–56. The Court must accept the allegations as true and draw all reasonable inferences in LMNT's favor. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009).

To state a plausible claim for trademark infringement, "a plaintiff must plead '(1) that it ha[s] trademark rights in the mark or name at issue and (2) that the other party ha[s] adopted a mark or name that [is] the same or confusingly similar to its mark, such that consumers [are] likely to confuse the two.'" *Gencor*, *supra* at *5 (quoting *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012) (citations omitted)). This same standard applies to Plaintiff's federal and state unfair competition claims. *See Marco's Franchising, LLC v. Marco's Italian Exp., Inc.*, No. 8:06-cv-00670-T-17-TGW, 2007 WL 2028845, at *3 (M.D. Fla. July 9, 2007) (analyzing all counts related to likelihood of confusion together).

LMNT's Complaint easily clears that low threshold. It alleges ownership of valid federal registrations (Compl. ¶ 28), continuous use of the LMNT mark since 2018 (Compl. ¶¶ 20–26), and extensive investment in its brand to strengthen its marks (Compl. ¶ 20). It pleads that Defendant markets related supplements under

confusingly similar marks that emphasize "ELMNT" as the dominant source identifier. Compl. ¶¶ 3-5, 33-35. And it pleads overlapping sales and advertising channels, overlapping consumers, and a resulting likelihood of confusion. Compl. ¶¶ 26-27, 36-38, 42-44. These allegations go well beyond formulaic recitations; they sketch a detailed factual narrative of infringement.

Defendant's motion, by contrast, asks the Court to weigh competing inferences, assess consumer perception, and resolve factual disputes—all undertakings reserved for later stages.

### 3. The Complaint Plausibly Alleges Likelihood of Confusion Under the Factors Used by the Eleventh Circuit

Courts in the Eleventh Circuit consider seven factors—set forth below—to determine whether a likelihood of confusion exists between two marks. *See Alliance Metals, Inc. v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000) (identifying and applying the seven-factor framework).

At the Rule 12(b)(6) stage, however, LMNT need only plead facts that make a likelihood of confusion plausible. *See Xymogen, Inc. v. Digitalev*, LLC, No. 617-CV-869-ORL-31-KRS, 2018 WL 659723, at *4 (M.D. Fla. Feb. 1, 2018) (holding "Plaintiff need not actually show that there was in fact a likelihood of consumer confusion."). LMNT's Complaint easily satisfies that low bar. Indeed, although applying the seven-factor test is a matter for proof at trial rather than one requiring factor-by-factor pleading, LMNT's Complaint goes the extra mile by actually setting out detailed factual allegations that address each of the seven factors:

***Similarity of the marks.*** ELMNT represents to this Court that "Plaintiff does not, in fact, allege anywhere in the Complaint that the marks are similar." Motion at 17. But LMNT's Complaint does precisely that.[6] LMNT's allegations also point out how Defendant emphasizes "ELMNT" as the dominant portion of its mark, by making the word "TERRA" so tiny as to be virtually invisible, while presenting "ELMNT" in bold, prominent form. Compl. ¶¶ 3-5, 33-35. The dominant shared element—LMNT/ELMNT—differs only by a single letter, while being pronounced the same and conveying the same overall impression.

***Similarity of the goods.*** LMNT pleads that it sells dietary supplements (Compl. ¶¶ 20-21, 25, 26), and that Defendant likewise sells dietary supplements (Compl. ¶¶ 4, 33, 37). Both sets of products are thus in the exact same product category, and are marketed to the same class of consumers. Compl. ¶¶ 36, 27. Here again, ELMNT sees fit to represent to this Court that LMNT "does not actually allege that the goods sold by it and ELMNT are similar." But the Complaint plainly does so.[7] In any event, determining whether the parties' products are related is a factual inquiry that is premature on a motion to dismiss. *See ICON Health & Fitness, Inc. v. IFITNESS, Inc.*, No. 12-20125-CIV, 2012 WL 1120925, at *4 (S.D. Fla. Apr. 3, 2012) (motion to dismiss is not the time to assess whether products were sufficiently related).

---

[6] *E.g.*, "Defendant's unauthorized use of the LMNT mark, and/or **confusingly similar** variations thereof, is causing and is likely to continue to cause confusion, or to cause mistake, or to deceive, consumers and the relevant public…." Compl. ¶ 61 (emphasis added); *Id.* at ¶¶ 63, 80-82.

[7] "The products ELMNT offers . . . are **identical or related to those goods** LMNT offers and sells under the LMNT mark, including the trademark registrations listed in paragraph 28." Compl. ¶ 80 (emphasis added); *see also* Compl. ¶¶ 4, 49-50, 60-61.

***Similarity of sale methods.*** LMNT alleges that both parties sell through at least Amazon and Walmart.com, where their products appear side by side, increasing the likelihood of consumer confusion. Compl. ¶¶ 26, 37, 38. These allegations underscore that the parties' goods move through *identical* online channels in the same virtual marketplace, heightening the risk of source confusion.

***Similarity of advertising methods.*** LMNT alleges that both parties promote their products through overlapping digital channels, creating repeated opportunities for confusion. Specifically, LMNT advertises extensively online, including "YouTube and other social media platforms" (Compl. ¶ 24) and markets through "on-line channels of trade such as its own website, Amazon, and Walmart.com." Compl. ¶ 26. ELMNT likewise "uses its own website, Amazon, and Walmart.com to promote and sell its products" (Compl. ¶ 37) and markets under the ELMNT marks "within the titles of Google Ads" (Compl. ¶ 34) as well as on YouTube (Brams Decl. ¶ 29). LMNT thus alleges facts plausibly supporting a similarity of advertising methods.

***Evidence of actual confusion.*** At the pleading stage, no evidence of actual confusion is required to state a claim for trademark infringement. *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1340 (11th Cir. 1999) ("evidence of actual confusion . . . is not a prerequisite"). Such evidence is developed through discovery.

***Defendant's intent.*** The Complaint alleges that ELMNT's infringing actions were performed willfully and with bad-faith disregard for LMNT's rights. Compl. ¶ 52. Indeed, ELMNT has continued to use its marks after receiving notice of LMNT's

rights, supporting an inference of willful intent to trade on and benefit from LMNT's goodwill. Compl. ¶¶ 41-42, 52, 63. The obvious similarities between the LMNT and ELMNT marks, taken together with the similarity of goods and of target customers, more than suffice at the pleading stage to support an inference of intent.

***Strength of LMNT's mark.*** LMNT pleads continuous use of its LMNT mark since 2018, federal registrations, millions in sales, and over 35,000 Amazon reviews—all showing significant commercial strength. Compl. ¶¶ 20-26, 28. ELMNT jumps the gun by arguing, through the Lamb Declaration, that there is a "crowded field" that affects the strength of LMNT's mark. That argument goes to evidentiary weight, not pleading sufficiency. The merits of this issue are for a later stage. At this stage, LMNT has plausibly pled a strong, distinctive mark.[8]

In sum, LMNT's allegations more than clear the Rule 12(b)(6) threshold. "At this stage, [Plaintiff] merely has to plead each element of a trademark infringement claim and support each element with plausible facts." *ICON Health & Fitness, Inc. v. IFITNESS, Inc.*, No. 12-20125, 2012 WL 1120925, at *4 (S.D. Fla. Apr. 3, 2012).

[8] ELMNT's "crowded field" argument is also undermined by the fact that most of the third-party marks it cites spell out the word "ELEMENT" in its entirety or cover dissimilar goods. Moreover, ELMNT identifies only seven U.S. registrations containing the term LMNT, whereas the cases on which it relies for the "crowded field" theory all cite significantly more examples. ELMNT further admits that "many of these registrations cover goods and services that differ from LMNT's offerings." Motion at 15. And in any event, registration is not use—ELMNT makes no attempt to show which, if any, of these third-party marks are in commercial use. In short, ELMNT has not shown that the strength of LMNT's mark is diminished. Lastly, ELMNT's reliance on its TERRA ELMNT registration to claim that LMNT's pleading burden is somehow "even greater here" finds no support in any case law. A trademark examiner's ex parte review of an application, made without discovery or marketplace evidence, has no preclusive effect on a likelihood of confusion analysis in federal court, nor of course on the standards for whether a pleading suffices to state a claim.

Plaintiff has done that and more—having actually gone through and identified facts relating to each of the seven likelihood of confusion factors, even though that is not a pleading requirement. Defendant's response is to invite the Court to weigh evidence and resolve factual disputes—an approach that is premature at the pleading stage.

## IV. Conclusion

By selling even a single product bearing the accused mark in Florida, ELMNT would have subjected itself to personal jurisdiction here under the *Calder* test. But it has done vastly more than that—it conducts systematic and ongoing sales of such products into Florida, both through its own website and through other retail channels, and maintains other business relationships in Florida as well. These contacts amply suffice to establish personal jurisdiction.

As for the Rule 12(b)(6) portion of the motion to dismiss, LMNT's Complaint plausibly pleads a likelihood of confusion in support of its claims. At the Rule 12(b)(6) stage, nothing further is required; although LMNT indeed does go further, providing considerable additional factual detail.

For the above reasons, ELMNT's motion to dismiss should be denied.

Respectfully submitted,

Date: December 26, 2025

*/s/ Ryan Van Olst*

Michael A. Albert (admitted *pro hac vice*)
malbert@wolfgreenfield.com
Christina M. Licursi (admitted *pro hac vice*)
clicursi@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
617.646.8000 Phone
617.646.8646 Fax

Ryan Van Olst (admitted *pro hac vice*)
rvanolst@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
601 Massachusetts Avenue, NW
Washington, DC 20001
202.571.5001 Phone
617.646.8646 Fax

Nicole Berkowitz Riccio (FL 1054795)
nriccio@bakerdonelson.com
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ
200 East Broward Boulevard, Suite 2000
Fort Lauderdale, FL 33301
901.577.8166 Phone
901.577.0866 Fax

*Counsel for Plaintiff Drink LMNT, Inc.*

**CERTIFICATE OF SERVICE**

I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

*/s/ Ryan Van Olst*
Ryan Van Olst