UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DRINK LMNT, INC.,

    Plaintiff,

v.                                                            Case No.:  2:25-cv-1018-SPC-KRH

ELMNT, LLC,

    Defendant.

---

**OPINION AND ORDER**

Before the Court is Defendant ELMNT, LLC's Motion to Dismiss Plaintiff's Complaint.  (Doc. 18).  Plaintiff Drink LMNT, Inc. responded (Doc. 30), Defendant filed a reply (Doc. 60), and Plaintiff filed a sur-reply (Doc. 61). Also before the Court are: Plaintiff's Objection to Magistrate Judge's Order Denying Request for Jurisdictional Discovery (Doc. 64) and Defendant's response (Doc. 65); and Plaintiff's Objection to Magistrate Judge's Order Denying Request for Leave to Supplement Opposition to Defendant's Motion to Dismiss (Doc. 53), Defendant's response (Doc. 54), and Plaintiff's reply (Doc. 57).  For the following reasons, the Court overrules the objections and grants the motion to dismiss.

### A. Background and Procedural History

Plaintiff markets and sells dietary supplements and drink mixes under its federally registered LMNT mark.  (Doc. 1 ¶¶ 18–20, 26–27).  Since 2018, Plaintiff has invested heavily in building nationwide recognition of its brand, distributing its products through its own website and through online retailers such as Amazon and Walmart.com, as well as through brick-and-mortar retailers including Target, Walmart, and The Vitamin Shoppe.  (*Id.* ¶ 24).  Plaintiff is headquartered in this District.  (*Id.* ¶ 18).

Defendant markets and sells dietary supplements under the names "ELMNT," "ELMNT HEALTH," and "TERRA ELMNT."  (*Id.* ¶¶ 33–35).  Defendant sells and ships its products to consumers directly through its own interactive website, and through Amazon and Walmart.com where its products appear alongside those of Plaintiff.  (*Id.* ¶¶ 13, 36–37).

On March 20, 2025, Plaintiff filed a complaint in the District of Massachusetts, asserting nearly identical claims to those alleged here.  *See Drink LMNT, Inc. v. ELMNT, LLC*, C.A. No. 1:25-cv-10659-MJJ (D. Mass.) (Doc.1) ("Massachusetts Action").  Plaintiff asserted that Defendant transacted business in Massachusetts by selling goods on its website, Amazon, and Walmart.com and generated substantial revenue from Massachusetts residents.  Defendant moved to dismiss the Massachusetts Action for lack of personal jurisdiction and failure to state a claim.

2

On November 5, 2025, the Massachusetts court granted Defendant's motion via endorsed order, finding that Plaintiff failed to establish personal jurisdiction. (Massachusetts Action, Doc. 29). Specifically, Plaintiff failed to show that Defendant purposefully availed itself in Massachusetts. Among other relevant matters, the court stated that "there is nothing in the record to show that a Massachusetts resident bought an ELMNT product other than Drink's test buy, that ELMNT advertised its products in Massachusetts, or that ELMNT maintains any offices, agents, or employees in Massachusetts. In other words, the websites do 'not contain content that is any more likely to solicit or serve customers in Massachusetts than anywhere else.'" (*Id.* (citation omitted)). The court also denied Plaintiff's conditional motion for jurisdictional discovery because Plaintiff "failed to make a colorable claim for personal jurisdiction." (*Id.*). Case dismissed.

The following day, Plaintiff filed this nearly identical lawsuit, alleging that Defendant willfully infringed its trademark rights. Plaintiff brings claims for federal trademark infringement (count I); unfair competition and false designation of origin (count II); unfair competition in violation of Florida common law (count III); and cancellation of U.S. trademark registration (count IV).

What followed can only be described as unnecessarily tortured litigation. Rarely has the Court seen such a congested docket before it has ruled on a

motion to dismiss.[1]   For clarity, the Court finds it necessary to outline the procedural history here.

As in Massachusetts, Defendant moved to dismiss the case for lack of personal jurisdiction and failure to state a claim.  (Doc. 18).  A week later, Plaintiff moved to conduct jurisdictional discovery.  (Doc. 25).  United States Magistrate Judge Douglas N. Frazier denied the motion ("Discovery Order"). (Doc. 37).  He explained that the "issue revolves around whether Plaintiff has shown a factual dispute to which jurisdictional discovery would support its allegations.  Plaintiff has not."  (*Id.* at 7).  In short, Judge Frazier found Plaintiff's three test purchases—all of which occurred in November 2025, nearly a week or more after this action was filed on November 6—too little too late.   He concluded that these "few random sales after the filing of the Complaint do not support a need to open jurisdictional discovery."  (*Id.*) Rather, jurisdictional discovery would merely serve as an impermissible fishing expedition.  Three days after entry of the Discovery Order, Judge Frazier granted Plaintiff's request to file Rule 72(a) objections to the Discovery Order 14 days after the issuance of a decision on the motion to dismiss.  (Doc. 40).

---

[1] The Court's docket has been inundated with habeas petitions filed by detainees at the immigration facility known as Alligator Alcatraz, which has prohibited the Court from addressing this case sooner.

Undeterred by its failure to obtain jurisdictional discovery, Plaintiff moved for leave to supplement its opposition to the motion to dismiss. (Doc. 43). Defendant moved to strike the motion, but Judge Frazier denied the motion. (Docs. 44, 45). Other—arguably gratuitous—motion practice followed. (Docs. 49, 50, 51).

Ultimately, Judge Frazier denied Plaintiff's motion to supplement its response to the motion to dismiss ("Supplement Order"). (Doc. 52). He pointed out that the issue was "arguably similar to Plaintiff's request for jurisdictional discovery, at least as to the timing of the events." (*Id.* at 4). Once again, Plaintiff was "attempting to marshal facts that it should have had, but did not, before filing suit." (*Id.*). Critically, he stated that Plaintiff "may be attempting to circumvent the [Discovery Order] that denied Plaintiff's request for jurisdictional discovery by engaging in what may be considered discovery to shore up its allegations of personal jurisdiction over Defendant." (*Id.*). Further, "[t]his investigation should have occurred prior to filing suit." (*Id.*).

## B. Legal Standards[2]

Through Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss based on lack of personal jurisdiction. "A plaintiff seeking to establish

---

[2] The Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to" Plaintiff. *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009).

personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). However, if "a defendant challenges personal jurisdiction 'by submitting affidavit evidence in support of its position,'" the plaintiff then bears the burden of producing evidence supporting jurisdiction. *Id.* (quoting *United Techs.*, 556 F.3d at 1274). Nevertheless, "when 'the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction,'" the plaintiff need not rebut those assertions with supporting evidence. *Id.* (quoting *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006)). When the plaintiff's complaint and the defendant's evidence conflict, the court "construe[s] all reasonable inferences in favor of the plaintiff." *Stubbs*, 447 F.3d at 1360.

To survive a Rule 12(b)(6) motion, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Bare "labels and conclusions, and a formulaic recitation of the elements of a cause of action," do not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See id.* at 570. A claim is facially plausible when a

court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct.  *See Iqbal*, 556 U.S. at 678.

Rule 72(a) authorizes a district court to review a litigant's objection to a magistrate judge's order addressing a non-dispositive matter.  Fed. R. Civ. P. 72(a).  Under Rule 72(a), the district court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law."  *Id.*; *see also Howard v. Hartford Life & Accident Ins. Co.*, 769 F. Supp. 2d 1366, 1372 (M.D. Fla. 2011).  "Clear error is a highly deferential standard of review."  *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005).  "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Tempay, Inc. v. Biltres Staffing of Tampa Bay, LLC*, 929 F. Supp. 2d 1255, 1260 (M.D. Fla. 2013) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure."  *Id.* (quoting *S.E.C. v. Kramer*, 778 F. Supp. 2d 1320, 1326–27 (M.D. Fla. 2011)).

### C. Analysis

First, the Court addresses Plaintiff's objections to Judge Frazier's orders.  Then, the Court turns to the motion to dismiss.

### 1. Objections to Discovery Order

In the Discovery Order, Judge Frazier denied Plaintiff's request to conduct jurisdictional discovery. (Doc. 37). He explained in great detail both parties' arguments (which the Court need not reiterate here) and set forth the relevant legal standard. (*Id.* at 4–7). He considered Plaintiff's effort to show a factual dispute through several test purchases from Defendant, all of which occurred in mid-November 2025—nearly a week or more after this action was filed on November 6, 2025. In his view, those test purchases made after the filing of the Complaint did not support a need to open jurisdictional discovery. Nor did Plaintiff's review of some postings on Google, Amazon.com, Walmart.com, or Instagram. Because these post-suit purchases and advertisements, coupled with Plaintiff's failure to produce even one sale of its product to a Florida resident other than these test cases, failed to show a dispute sufficient to open jurisdictional discovery, the motion was denied.

Plaintiff objects to Judge Frazier's Discovery Order, arguing Defendant has more than sufficient contacts with Florida to be subject to personal jurisdiction in this Court. (Doc. 64). It raises the same arguments as it did before Judge Frazier concerning sales volume and advertising (Doc. 25 at 10–

13, Doc. 64 at 3–5) and raises what appear to be some new arguments concerning warehousing and Florida business relationships.[3]

To the extent Plaintiff argues disputes of jurisdictional fact exist, the Court overrules the objection. Neither Judge Frazier nor the undersigned consider Plaintiff's test purchases made after the filing of the complaint. Courts in this Circuit, including this Court, do not condone parties' attempts to marshal facts they should have had but did not before filing suit. *See Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1339 (S.D. Fla. 2016) (holding that plaintiff was "foreclosed from pursuing jurisdictional discovery in an attempt to marshal facts that [it] 'should have had— but did not—before coming through the courthouse doors'").

Next, Plaintiff argues Judge Frazier erred in crediting Defendant's characterization of its Florida sales as "insignificant." (Doc. 64 at 6). Not so. The Discovery Order merely explains that Defendant does not dispute that some insignificant sales are made into Florida. (Doc. 37 at 5, 7). And the Discovery Order uses the word "random" to reason that the post-suit test sales

---

[3] "Eleventh Circuit precedent expressly provides the district court with discretion 'to decline to consider a party's argument when that argument was not first presented to a magistrate judge.'" *Johnson v. Flagler Cnty. Sch. Dist.*, 628 F. Supp. 3d 1167, 1172 (M.D. Fla. 2022) (quoting *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("Thus, we answer the question left open in *Stephens* [*v. Tolbert*, 471 F.3d 1173, 1174 (11th Cir. 2006)] and hold that a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge.")). To the extent Plaintiff raises new arguments in the objection, the Court declines to consider them.

do not support a need to open jurisdictional discovery. (*Id.* at 7). This objection is also overruled.

Plaintiff argues that the Discovery Order imposes an evidentiary standard that does not apply at the pleading stage. (Doc. 64 at 7). It complains that Judge Frazier faults Plaintiff for not producing proof of sales of Defendant's product to a Florida resident other than its test cases. (*Id.*). The Court disagrees. The Discovery Order explained that Plaintiff's post-suit purchases and some advertisements do not support opening discovery and essentially permitting a fishing expedition. (Doc. 37 at 8). The statement that Plaintiff failed to show evidence of a non-test sale supports the underlying issue: that Plaintiff failed to conduct an appropriate pre-suit investigation by not having evidence of purchases made before it filed the complaint. Because Judge Frazier did not impose an incorrect evidentiary standard, this objection is overruled.

Plaintiff further argues that the Riccio Declaration and attached exhibits confirm a genuine factual dispute exists. (Doc. 64 at 9–10). But this declaration was submitted after Judge Frazier issued the Discovery Order and cannot form a basis for error now. (Doc. 43-1). And even so, the test purchases contemplated in the Riccio Declaration were post-suit and are not part of the record. This objection is overruled.

10

The Court finds that the Discovery Order was not clearly erroneous or contrary to law and overrules all of Plaintiff's objections.

## 2. Objections to Supplement Order

Defendant submitted evidence in support of its motion to dismiss in which Defendant's co-founder Wesley Marriott stated that it does not work with a distributor that specifically serves Florida ("Marriott Declaration"). (Doc. 19 ¶ 9). In Plaintiff's objection, it argues that this evidence calls into question whether Defendant warehouses products in Florida through Amazon's Fulfillment by Amazon program. (Doc. 53 at 2). Plaintiff tested this situation by ordering an ELMNT product on Amazon.com. The product arrived at an Amazon carrier facility in Orlando within one hour. In Plaintiff's view, the product could only have been warehoused in Florida because the nearest out-of-state Amazon fulfillment center is over 438 miles away. (*Id.*). Plaintiff sought leave to supplement the record with this evidence.

In the Supplement Order, Judge Frazier denied Plaintiff leave to do so, reasoning that the issues were similar to those addressed in the Discovery Order and Plaintiff could have obtained these facts before filing suit. (Doc. 52). Plaintiff challenges Judge Frazier's decision and the legal framework he applied. For the following reasons, the Court overrules the objection.

First, Plaintiff makes much of the legal framework Judge Frazier used to decide the Supplement Order. In the Eleventh Circuit, "[i]t is within th[e]

11

Court's discretion to permit [a plaintiff] to supplement the record." *Wilssens v. Medtronic, Inc.*, No. 09-60792-CIV, 2009 WL 9151079, at *4 (S.D. Fla. July 23, 2009) (citing *Stinson, Lyons, Gerlin & Bustamante, PA. v. Brickell Bldg. 1 Holding Co., Inc.,* 923 F.2d 810 (11th Cir. 1991) (referring to district court's denial of party's motion to supplement the record, "It is a decision left to the discretion of the trial court and will not be reversed absent a clear finding of abuse of discretion.")). Judge Frazier exercised his discretion to deny Plaintiff the opportunity to supplement its response. While he invoked case law related to the standard for jurisdictional discovery, it helped explain his reasoning. (Doc. 52 at 4).

By that time, Plaintiff had already failed to obtain jurisdictional discovery. (Doc. 37). Plaintiff responded to the motion to dismiss on December 26, 2025. (Doc. 30). Defendant filed the Marriott Declaration on December 5, 2025. (Doc. 19). As Defendant points out, there is no reason Plaintiff could not have obtained and submitted the evidence with its response. (Doc. 54 at 9–10). Further, Plaintiff provides no reason in its objection or its reply. (Docs. 53, 57). The Court agrees with Defendant: "[t]hat, alone, is fatal to [Plaintiff's] objection." (Doc. 54 at 10).

Not only that, the Court agrees with Judge Frazier's reasoning and sees no clear error. There is no reason Plaintiff could not have obtained this evidence before filing suit here. Plaintiff itself emphasizes in its objection that

"[n]o court prohibits parties from using their own resources to investigate their own cases." (Doc. 53 at 8). There is no clear error in Judge Frazier's decision denying Plaintiff the opportunity to, as Defendant puts it, "indefinitely . . . try to attack the declaration while the Motion to Dismiss is pending." (Doc. 54 at 9). It is telling that Plaintiff did not attempt to obtain this evidence or file the motion for leave to supplement its opposition until *after* Judge Frazier denied the request for jurisdictional discovery. Plaintiff has attempted to obtain so many bites at the apple, the Court has nearly lost count.[4]

Defendant argues that Plaintiff's attempt to supplement its response is an "attempt to exploit the Court's busy docket." (Doc. 54 at 7). True. As Defendant puts it, "[i]f litigants could during that intervening period [between the briefing and ruling on a motion to dismiss], continue to conduct investigations, whether independently or through discovery, briefing deadlines would be illusory and rulings postponed indefinitely." (*Id.* at 8). All of Plaintiff's actions in this case are an end run around the fact that it chose to file suit on Plaintiff's home turf in Florida, instead of arguably the most logical and proper venue—Defendant's home in Utah. Not only that, as explained below, Plaintiff did so before marshaling sufficient support for personal

---

[4] Even after its attempt to obtain jurisdictional discovery and supplement its response, it also held in reserve the opportunity to file objections to the Discovery Order in the event the Court granted the motion to dismiss. (Doc. 40). However, the Court vacated that order and directed the parties to file objections and responses to the Discovery Order so that the Court could address all issues related to personal jurisdiction in this Order. (Docs. 62, 63).

jurisdiction over Defendant in Florida. Its eleventh-hour tactics cannot salvage its deficient personal jurisdiction allegations.

Notwithstanding the foregoing procedural reasons to overrule the objection, the Court also overrules it on the merits. The Court agrees with Defendant on that score, too. Even if Plaintiff demonstrated that Defendant uses Amazon as a distributor, it has not shown that Defendant uses a distributor which focuses on Florida any more than the other 49 states. (Doc. 54 at 3). There is no evidence that Amazon specifically serves Florida. As such, Plaintiff's proffered evidence does not create a factual dispute concerning personal jurisdiction. For all these reasons, the Court overrules Plaintiff's objections to the Supplement Order.

### 3. Personal Jurisdiction

Courts consider two questions when asked to exercise jurisdiction over out-of-state defendants: (1) whether personal jurisdiction exists under the forum state's long-arm statute; and (2) whether exercising jurisdiction over the nonresident defendant would violate the Due Process Clause of the Fourteenth Amendment. *Rowe v. Gary, Williams, Parteni and Gary, P.L.L.C.*, 723 F. App'x 871, 874 (11th Cir. 2018) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)).

*Plaintiff's Personal Jurisdiction Allegations*

These are the allegations of personal jurisdiction in the Complaint:

14

12. This Court has specific personal jurisdiction over ELMNT under Fla. Stat. § 48.193(1)(a)(1)–(2). ELMNT has purposefully availed itself of the privilege of conducting business in Florida by marketing, promoting, offering for sale, and selling dietary and nutritional supplements bearing the infringing ELMNT, ELMNT HEALTH, and TERRA ELMNT marks to Florida consumers—including consumers in this District—through its interactive website and through online retail platforms such as Amazon and Walmart.com.

13. ELMNT's website is expressly configured to target and serve Florida residents. It accepts orders with Florida shipping addresses, calculates shipping and taxes for Florida destinations, processes payments from Florida customers, and ships the accused products into the state. Florida residents can and do purchase the infringing products directly from the site, where the ELMNT, ELMNT HEALTH, and TERRA ELMNT marks are prominently displayed.

14. Upon information and belief, ELMNT has made numerous sales of infringing products to Florida purchasers. Its website, Amazon listings, and Walmart.com offerings all identify Florida as a shipping destination, and ELMNT routinely ships infringing goods into Florida in the ordinary course of business.

15. Upon information and belief, ELMNT has generated substantial revenue from sales of products featuring the infringing marks to consumers in Florida.

16. By intentionally operating commercial sales channels that reach and serve consumers in Florida, ELMNT should reasonably anticipate that it is subject to the jurisdiction of this Court.

17. Exercising personal jurisdiction over ELMNT comports with due process because ELMNT's Florida-directed commercial activities give rise to, and are directly related to, the claims asserted in this action. ELMNT purposefully availed itself of the Florida market, and the exercise of jurisdiction is reasonable and fair.

18. Exercising jurisdiction over ELMNT does not offend traditional notions of fair play and substantial justice. LMNT is headquartered in this District, maintains a substantial customer base here, and Florida has a strong interest in adjudicating disputes involving trademark infringement affecting a Florida business and Florida consumers.

(Doc. 1 ¶¶ 13–18).

### *Florida's Long-Arm Statute*

First, Florida's long-arm statute. Although Defendant "disputes that [Plaintiff's] allegations are sufficient to establish that the exercise of personal jurisdiction over [Defendant] is appropriate under the Florida long-arm statute," it offers no substantive arguments against it. (Doc. 18 at 14). Accordingly, the Court considers the argument conceded. *See Inversiones YV3343, C.A. v. Lynx FBO Fort Lauderdale, LLC*, No. 21-CV-60197, 2024 WL 2938805, at \*5 (S.D. Fla. June 11, 2024) (citing *NLRB v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.")).

### *Due Process Clause*

The Fourteenth Amendment's Due Process Clause limits a state's authority over nonresidents. Jurisdiction is proper only if the nonresident defendant has certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and

substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  In specific jurisdiction cases like this, courts apply a three-part test:

> [W]e examine whether (1) the plaintiff's claims "arise out of or relate to" one of the defendant's contacts with the forum state; (2) the nonresident defendant "purposefully availed" itself of the privilege of conducting activities within the forum state; and (3) the exercise of personal jurisdiction is in accordance with traditional notions of "fair play and substantial justice."

*Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1275 (11th Cir. 2022).  Plaintiff bears the burden of establishing the first two requirements.  If it carries that burden, Defendant must make a compelling case that exercising personal jurisdiction would violate traditional notions of fair play and substantial justice.  *Id.*

Plaintiff's claims arise out of Defendant's use of the ELMNT, ELMNT HEALTH, and TERRA ELMNT marks on its interactive website, and through online retail platforms such as Amazon and Walmart.com, which are accessible in Florida.  (Doc. 1 ¶¶ 12–14).  Defendant's ties to Florida involve selling products featuring the ELMNT, ELMNT HEALTH, and TERRA ELMNT marks to Florida residents.  (*Id.* ¶ 13).  This first requirement is satisfied.

The parties contest the second prong.  In intentional tort cases like this one, there are two tests for purposeful availment.  The Supreme Court

17

articulated the "effects test" in *Calder v. Jones*, 465 U.S. 783 (1984). It allows a defendant's single tortious act to establish purposeful availment if the tort: "(1) was intentional; (2) was aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Louis Voutton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1356 (11th Cir. 2013) (cleaned up).

Courts can also apply the traditional "minimum contacts" test. It asks whether the nonresident defendant's contacts with the forum state "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Id.* at 1357. "In performing this analysis, we identify all contacts between a nonresident defendant and a forum state and ask whether, individually or collectively, those contacts satisfy these criteria." *Id.*

Under both tests, the "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). "[T]he plaintiff cannot be the only link between the defendant and the forum." *Id.* In *Licciardello v. Lovelady*, the Eleventh Circuit illustrated the contours of personal jurisdiction in trademark cases by looking at cases from around the country. 544 F.3d 1280,

1284–87 (11th Cir. 2008).  For example, the Ninth Circuit observed that "the mere posting of an infringing trademark on a website 'without more' might not be sufficient to demonstrate that the defendant purposefully aimed his activity toward the forum state."  *Id.* at 1287 (citing *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1321–22 (9th Cir. 1998)).  It is also not enough that harm in the forum is foreseeable; the defendant must "'expressly aim' his wrongful conduct, individually targeting a known forum resident."  *Id.* (citing *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000)).  So a court has jurisdiction if the defendant uses a trademark to, for example, extort a forum resident or pass itself off as a forum resident.

Plaintiff's personal jurisdiction allegations fail both tests.[5]  As an initial matter, the allegations describe Defendants' contacts with Florida residents, purchasers, or consumers, not the forum state of Florida, as the case law

---

[5] Rather inexplicably, Plaintiff filed the relevant affidavits concerning its test purchases in connection with the motion for jurisdictional discovery and the motion to supplement the response to the motion to dismiss, when it should have done so in a timely manner either before filing suit or in response to the motion to dismiss.  The Court has overruled the objections and affirmed the Discovery Order and the Supplement Order.  So to the extent Plaintiff relies on its test purchases to establish personal jurisdiction, the Court does not consider them.

In its sur-reply, Plaintiff argues the Court should consider evidence of its test buys. (Doc. 61 at 4 (arguing that [t]he Eleventh Circuit allows parties to submit competing jurisdictional affidavits and other evidence ***in response to each other's submissions***. *See Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010)") (emphasis in original)).  For the sake of argument, even if the Court considered all of the affidavits concerning Plaintiff's test buys, they do not demonstrate that Defendant purposefully availed itself of Florida.  Like in the Massachusetts Action, here, the record does not show that a Florida resident bought one of Defendant's products, other than Plaintiff's test buys.

requires.  (*See, e.g.*, Doc. 1 ¶ 13 ("ELMNT's website is expressly configured to target and serve Florida residents"); ¶ 14 ("ELMNT has made numerous sales of infringing products to Florida purchasers"); ¶ 15 ("ELMNT has generated substantial revenue from sales of products featuring the infringing marks to consumers in Florida")).

The allegations here are as deficient as they were in the Massachusetts Action.  Plaintiff has failed to allege that Defendant intentionally directed any tortious conduct toward Florida.  Plaintiff has not alleged or provided evidence that Defendant advertises its products in Florida or maintains any offices, agents, or employees in Florida.  *See* Massachusetts Action, Doc. 29.  Further, there is no evidence showing Defendant targeted Plaintiff or was even aware Plaintiff was headquartered in Florida until the Massachusetts Action was filed in March 2025.  (Doc. 19 ¶ 15).

Additionally, Plaintiff has not shown that Defendant specifically targeted Florida using its website or the Amazon and Walmart websites.  The "effects test [is] met when [a] tort is *expressly aimed* at a specific individual in the forum whose effects were suffered in the forum." *Karnas v. Cuban*, No. 22-CV-22538, 2025 WL 3759241, at *9 (S.D. Fla. Dec. 30, 2025) (emphasis in original) (quoting *ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332, 1342 (11th Cir. 2025) (cleaned up)).  Defendant's website does not contain content that is any more likely to solicit or serve customers in Florida than

anywhere else.  *See* Massachusetts Action, Doc. 29 (quoting *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 123 (1st Cir. 2022)).

As Defendant emphasizes, Plaintiff's allegations are general and would be true of any company selling its products on its own website or via Amazon or Walmart.  (Doc. 60 at 6).  Like other courts in this District, this Court finds that "the Internet does not provide cause to abandon traditional principles guiding the personal jurisdiction analysis." *Goforit Ent. LLC v. Digimedia.com L.P.*, 513 F. Supp. 2d 1325, 1329 (M.D. Fla. 2007) (citing *Instabook Corp. v. Instantpublisher.com,* 469 F. Supp. 2d 1120 (M.D. Fla. 2006)).  Since the Court cannot say that Florida functioned as the focal point of the harm, Plaintiff's reliance on the effects test fails here.  *See Karnas*, 2025 WL 3759241, at *9.

So does its reliance on the minimum contacts test.  As this Court explained in another case where personal jurisdiction allegations failed to satisfy the minimum contacts test, a purchase on a website was "not the type[] of contact[] that make[s] jurisdiction proper under traditional jurisdictional standards."  *Avow Hospice, Inc. v. Avow Found. for Abortion Access, Inc.*, No. 2:23-CV-132-SPC-KCD, 2023 WL 8878221, at *3 (M.D. Fla. Dec. 22, 2023).  "If they were, any person could give their home state jurisdiction over [a defendant] by making a donation or purchase from [the defendant's] website. 'The creation of such *de facto* universal jurisdiction runs counter to the approach the Court has followed since *International Shoe*[.]'"  *Id.* (quoting

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801–02 (7th Cir. 2014) (holding that an interactive website accessible in the forum state and the inclusion of forum residents on an email list of customers did not establish minimum contacts)).

Without sufficient contacts to satisfy due process, exercising personal jurisdiction over Defendant would violate traditional notions of "fair play and substantial justice." *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1275 (11th Cir. 2022). For all these reasons, the Court finds it lacks personal jurisdiction over Defendant and need not evaluate the sufficiency of the Complaint under Rule 12(b)(6). Because Plaintiff does not ask the Court to transfer this action to a proper venue, the Court will dismiss it without prejudice.

Accordingly, it is now

**ORDERED:**

1. Plaintiff's Objection to Magistrate Judge's Order Denying Request for Jurisdictional Discovery (Doc. 64) is **OVERRULED**.

2. The Court **AFFIRMS** the Discovery Order (Doc. 37).

3. Plaintiff's Objection to Magistrate Judge's Order Denying Request for Leave to Supplement Opposition to Defendant's Motion to Dismiss (Doc. 52) is **OVERRULED**.

4. The Court **AFFIRMS** the Supplemental Order (Doc. 52).

22

5.     Defendant ELMNT, LLC's Motion to Dismiss Plaintiff's Complaint (Doc. 18) is **GRANTED**.

6.     The Complaint (Doc. 1) is **DISMISSED without prejudice** for lack of personal jurisdiction.

7.     The Clerk is **DIRECTED** to enter judgment accordingly, deny all pending motions as moot, terminate any deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on July 10, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record